# WILLIAM M. BUTLER

*v.*

## ALTIERI A. HUESTIS *et al.*

1. POWER—*person having power to appoint a fee may appoint a less estate.* Where a party has the power to appoint a fee, if there are no words of positive restriction he may appoint a less estate. But where an appointment is to be made of a particular estate, or in a certain manner, and in no other way, the negative words must control, and the donee of the power is not permitted to appoint a different estate, or in any other manner.

2. Where real estate was conveyed to a trustee for the benefit of A, and the trustee was required, upon the death of A, to convey the same, or

so much thereof as might remain undisposed of, to such person or persons as A, by her last will and testament, or by an instrument in the nature of a last will, should direct and appoint, in fee simple, and she, by her last will, gave and bequeathed the property to B during her natural life, with the reversion and fee thereof to the heirs of her body, it was *held* that if the appointment was void, so far as the reversion was concerned, for the want of a person in being to take the same, there was no reason why the life estate in B could not take effect, and operate as a valid appointment, there being no words in the trust deed restricting the exercise of the power, except that it should be by will or an instrument in the nature of a will.

3. SHELLY'S CASE—*rule in.* If in any instrument a freehold be limited to the ancestor for life, and the inheritance to his heirs, either mediately or immediately, the first taker takes the whole estate; if it be limited to the heirs of his body, he takes a fee tail; if to his heirs generally, a fee simple. The words "heirs," or "heirs of the body," in such case, are words of limitation, and not of purchase.

4. SAME—*rule in respect to estates tail repealed by our statute.* An estate tail is where lands and tenements are given to one and the heirs of his body begotten, and may be either general or special. As our statute has saved the entail to the first degree only, saving a life estate to the first taker, and provides that the second taker shall take the remainder in fee simple absolute, the rule in Shelly's case, so far as estates tail are concerned, is repealed in this State.

5. Thus, when property in this State is devised to A for life, with the remainder to the heirs of his body, the words "heirs of his body" will be regarded as words of purchase, and not of limitation, and the first taker will take only a life estate, and the heirs of his body will take the remainder in fee simple.

6. SAME—*greater latitude given in construing wills than in deeds.* Greater latitude is given in the construction of wills than in deeds, and courts will look to the whole will, and if there are found explanatory words showing the intent of the testator that the words "heirs" or "heirs of the body," are employed to show that such persons shall take under the devise as a description of persons, they will be treated as words of purchase, and not of limitation.

7. SAME—*will construed in reference to.* Where land was devised to B during her life, with remainder to the heirs of her body "at and after her decease," the fact that the enjoyment of the estate by the heirs of her body is postponed until after the death of A, and then becomes absolute, shows that the testatrix did not use the words "heirs of her body" in the common law sense of words of limitation, to indicate a class of persons to take from generation to generation, but rather as words of purchase.

APPEAL from the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

This was a bill in equity, filed by William M. Butler, against Altieri A. Huestis, Seneca C. Bliss, Laban S. Major, Willa Mena and Celia T. Butler.

It appears that the complainant, in 1861, conveyed the property in dispute to Seneca C. Bliss, in trust for the use and benefit of Celia T. Butler, his wife, during her natural life. The wife, Celia T., died, after having made her last will, disposing of the property as stated in the opinion of the court. Butler, supposing the terms of the trust to have been violated by the devise, filed this bill to have the same executed according to his views of the same, and to have the property conveyed to his children by the said Celia T. Butler. The opinion presents the other material facts.

Messrs. AYER & KALES, for the appellant.

Messrs. HITCHCOCK & DUPEE, and Messrs. PADDOCK & IDE, for the appellees.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This bill is for relief, and is framed on the supposition there has been no nomination, by the donee, of any one in being to take the fee of the property, as provided in the deed of settlement.

The deed was made in 1861. The property was conveyed to a trustee, and the *habendum* clause provides he shall hold it "upon the special trusts, and for the uses and purposes, and subject to the powers and obligations," therein expressed, "and none others." The conveyance was made for the benefit of Celia T. Butler, wife of complainant, and the special trusts are declared in the third division, as follows: Upon the death of Celia T. Butler, the trustee shall convey the real estate, or so much thereof as shall remain undisposed of, to such person or persons as she, by her last will and testament,

or by an instrument in the nature of a last will and testament, subscribed by her in the presence of two or more credible witnesses, shall have directed and appointed. It is expressly declared that, upon the decease of Mrs. Butler, the real estate shall belong, in fee simple absolute, to such person or persons as she shall have appointed by her will; but in default of such appointment, it shall be conveyed to her children, upon the youngest arriving at the age of twenty-one years, and in the event of her death without having made any last will and testament, and the death of all her children, then to reconvey so much of the premises as should remain undisposed of.

In 1865, Mrs. Butler died, after having published her last will and testament in due form. By the fourth paragraph, the testatrix gives and bequeaths to Altieri A. Huestis the property involved in this litigation, with the use, possession, rents and profits during her natural life, " the reversion and fee thereof to the heirs of her body at and after her decease."

Whatever may have been the intention of the setlor of the property, it is quite clear the donee of the power was fully authorized by will, or an instrument in the nature of a will, to indicate the person or persons to whom the trustee should convey the estate upon her death. The vital and controlling question is, has she done this? The power is general, and the declaration is, the estate, upon the death of the donee, shall thence belong to such persons as she shall direct and appoint, in fee simple absolute. No broader power could have been given, nor is there any obscurity in the terms used, but the objection taken is, there was no person in being appointed by the will to take the fee of the property at the decease of the testatrix, and hence it is insisted there was no execution of the power.

The law seems to be well settled by authority, where a party has the power to appoint a fee, if there are no words of positive restriction a less estate may be appointed. The appointment of a less estate than the donee might have

created under the power, is not thereby rendered void.   But where an appointment is to be made of a particular estate, or in a certain manner, and in no other way, the negative words must control, and the donee is not permitted to appoint a different estate, or in any other manner.   *Swift* v. *Castle,* 23 Ill. 209 ; Sugden on Powers, p. 535, sec. 40 ; 2 Wash. Real Prop. p. 328, sec. 5.

The deed of settlement required the appointment to be made by will, or an instrument in the nature of a will.   There is, however, no restriction against appointing an estate to one party less than a fee, and appointing the fee to another on the determination of the former.   This the testatrix has attempted to do.   She has appointed a freehold estate for life in Mrs. Huestis, and an effort was made to appoint the fee to the heirs of her body.   But if the appointment was void because the fee was not appointed to a person in being, so far as that estate is concerned no reason is perceived why the lesser estate may not be maintained.

The difficulty in the case arises out of the use of the words in the will the "heirs of her body."   The argument is, the words "heirs of her body" are words of limitation, and not of purchase, as child, children, or issue.   In accordance with the maxim, *nemo est hæres viventis,* the living children are only heirs expectant, and hence no one can take an estate under that designation while the ancestor is living.   It is insisted these are words of limitation, within the rule in Shelly's case.   If they could be treated as meaning children of Mrs. Huestis, then they would be words of purchase, and all difficulty in the case would be avoided.   Mrs. Huestis, under our statute, would take a life estate in the property, and the remainder would pass in fee simple absolute to her children, although it might open to let in after-born children, and be divested as to such as should die before the determination of the life estate.

Prior to the statute *de donis,* the estate given to Mrs. Huestis, by the terms employed in the will, was a conditional

fee, and on the birth of issue the right of alienation would attach. Since the enactment of that statute, it is an estate-tail, and in case of the failure of "heirs of the body," it will revert to the donor, his heirs or appointees.

It was declared in *Baker* v. *Scott*, 62 Ill. 86, the rule in Shelly's case did not apply to an estate-tail, for the reason our statute has provided to the contrary, that is, the first taker shall have a life estate, and a fee simple absolute shall vest in the second taker. Laws 1872, sec. 6, p. 283.

Mr. Preston, in his essay on the rule in Shelly's case, among several definitions, gives one, which, in *Baker* v. *Scott*, was thought to be the most accurate expression of the rule, as follows: " In any instrument, if a freehold be limited to the ancestor for life, and the inheritance to his heirs, either mediately or immediately, the first taker takes the whole estate; if it be limited to the heirs of his body, he takes a fee-tail; if to his heirs, a fee simple."

The definition of the rule given by Mr. Jarman, in his work on Wills, is, in substance, the same, and almost in the same language. Jarman on Wills, 242.

In *Baker* v. *Scott*, the estate was not entailed by the words used in the devise. The fee was limited expressly to the heirs of the devisee. Neither the words " her body," nor any other words indicating procreation, which are indispensable to create an estate-tail, were used by the testator. An estate-tail is where lands and tenements are given to one and the heirs of his body begotten, and may be either general or special. BLACKSTONE says: " If, therefore, either the words of inheritance or words of procreation be omitted, albeit the others are inserted in the grant, this will not make an estate-tail." 2 Black. Com. 115.

It is apparent, therefore, the estate devised was not an estate-tail. It was simply a limitation of the fee to her heirs, and hence the rule in Shelly's case could be applied. But not so in the case at bar, for here the estate is devised in tail. The statute in this State has saved the entail to the first

degree. It is palpable, therefore, so far as estates-tail are concerned, the rule in Shelly's case has been repealed by the 6th section of the Conveyance act. It is immaterial whether, under our law, there is such an estate, strictly speaking, as an estate-tail, answering to the common law definition, but the statute provides a life estate to the first taker, with the remainder to the second taker in fee simple absolute; which is an estate-tail, although limited to the first degree. Therefore, it is absurd to say, under the rule in Shelly's case, notwithstanding our statute to the contrary, the first taker will take the whole estate in opposition to the expressed intention of the donor.

The rule can only operate in one case, that is, as in *Baker* v. *Scott*, where the devise gave the ancestor a freehold for life, and limited the inheritance in fee to the heirs without naming any particular class. Thus, as Mr. Jarman expresses it, if the limitation be to the heirs of the body, he takes a fee-tail; if to his heirs generally, he takes a fee simple. Jarman on Wills, 242. Had the limitation been to the " heirs of the body" of the devisee, an estate-tail would have been created, and our statute would have arrested the operation of the rule. The property would have passed to the second takers, and, by virtue of the statute, their estate would have been that of a " fee simple absolute."

Hence, the rule having no application to the case at bar, we are under no imperative necessity to regard the words used in the will, " heirs of her body," as words of limitation, rather than words of purchase. It is, at most, a technical rule of property, and has always, ever since the decision in *Perrin* v. *Blake*, 4 Burr. 2579, given away to the clear intention of the donor, when that could be ascertained from the instrument in which the words were used. Otherwise, instead of being a rule by which justice could be administered, it would be a source of incalculable mischief in its practical application.

In *Perrin* v. *Blake*, Mr. Justice BLACKSTONE, who seems to have delivered the most elaborate opinion ·of the several judges, agreed with the majority of the court of King's Bench, that " if the intent of the testator manifestly and clearly appeared (by plain expression or necessary implication from the other parts of the will,) that then the heirs of the body of A should take by purchase, and not by descent."

When it is remembered Mrs. Butler was not devising, in a literal sense, her separate property, but merely executing the power with which she was clothed, to appoint a person or persons who should take the estate under the deed of settlement, it seems to us most absurd and irrational that she intended or ever conceived the idea of appointing the heirs of the body of Mrs. Huestis, as a class, to take in succession from generation to generation. It is inconceivable she meant anything else than to appoint the fee of the estate to her children. The words of the will, read in connection with the power, make no other impression on the mind, and we will adopt no subtle finesse of construction to defeat her expression of an intention to bestow her bounty upon them.

Mr. KENT, in his Commentaries, states numerous cases in which in a devise the words " heirs," or " heirs of the body," have been taken to be words of purchase, and not of limitation, in opposition to the rule in Shelly's case, and gives this apposite illustration: where the testator annexes words of explanation to the word heirs, as to the heirs of A now living, showing thereby that he meant by the word " heirs" a mere *descriptio personarum*, or a specific designation of individuals. 4 Kent, 221.

· The words " heirs of her body," as employed in the will of Mrs. Butler, may, with great justness, be regarded as words of description as simply designating the children of Mrs. Huestis as the persons who should take the fee of the estate, and notwithstanding the fee may vest immediately, the enjoyment is postponed until " at and after her decease."

More latitude has been given to the construction of wills than deeds, and there is the highest authority for saying, to effectuate the clear intention of the testator, we may construe the words " heirs," " issue," "children," interchangeably. *Braden* v. *Cannon*, 1 Grant's Cases. 60 ; *Bowers* v. *Porter*, 4 Pick. 198 ; *Ebby* v. *Ebby*. 5 Penn. St. 461.

In *Strong* v. *Goff*, 11 East, 668, the testator devised one estate to his wife, and after her decease, to his daughter Mary, and the heirs of her body begotten, or to be begotten. as tenants in common, and not as joint tenants. Lord Ellenborough, in delivering his opinion, remarked: "We have looked through the cases which have been cited, and do not feel that we shall break in on any of them by holding that the children of Mary Goff took estates in common by purchase; this is distinctly and unequivocally expressed by the testator to be his intention. No contrary intention is expressed in any part of the will; nor is there any provision contained in the will inconsistent with this intention, nor from which a contrary intention can be fairly implied."

In *Tanner* v. *Livingston*, 12 Wend. 83, where a testator devised a tract of land to his son and his son's wife for and during their natural lives, and by a subsequent clause devised the same lands from and immediately after the decease of the son and wife, unto their heirs male, it was declared the son and his wife took estates for life, and their heirs living at the death of the testator took a vested fee in the remainder, which opened to let in after-born children. Mr. Justice Nelson, in delivering the opinion of the court, said : " Even in England, where the rule is rigidly applied in the construction of wills, where a devise is to a person and his heirs or heirs of his body, and there are words of explanation annexed to the word heirs, by which the testator meant to qualify that term, and not to use it in its technical sense, but as *descriptio personarum* to designate to whom he intended to give the estate after the death of the first taker, the word

heirs will operate as a word of purchase," and cites 4 Cruise, 346; Fearne, 183–7.

In the case we are considering, the very fact the enjoyment of the estate is postponed until "at and after the decease" of Mrs. Huestis, and then becomes absolute, shows beyond doubt the testatrix did not use the words "heirs of her body" in the common law sense of words of limitation, to indicate a class of persons to take from generation to generation. No such intention is expressed, nor does any arise by implication from the language used. It will best promote what must have been the purpose of the testatrix, to construe the words "heirs of her body" as words of description, as designating the children of Mrs. Huestis. This view of the law is sustained by both reason and authority.

We are disposed to regard what we must know was the clear intention of the testatrix, which we gather from the will itself when construed in connection with the power, as the all controlling element in the decision of the case, rather than place it upon any refined reasoning or inappreciable distinctions as to the technical meaning of the words employed. The authorities are numerous that hold the law well settled, notwithstanding the maxim *nemo est hæres viventis*, the word "heirs," when used in a will, ought to be taken as *designatio personarum* whenever it is manifest the testator intended to use it in that sense. They are as old and authoritative as the cases that announce the rule in Shelly's case.

If we are to interpret wills in the light of precedents, we ought to follow those that are most in harmony with the genius and laws of this country, and the manners and customs of its people. We ought rather to be guided by those that would most effectually do justice, and not by such as would give an arbitrary and technical meaning to words never understood or contemplated by the testator, that may defeat all the objects of his beneficence, as manifested by the last solemn act of his life, in disposing of his property to those he may deem most worthy of his bounty.

The decree must be affirmed.     *Decree affirmed.*