## MATTHEW G. GANNON

*v.*

## EUGENIA PETERSON *et al.*

*Opinion filed December 18, 1901.*

1. WILLS—*when words "heirs," "issue" and "children" may be read interchangeably.* If it is apparent from a reading of the will that the testator used the words "heirs," "issue" and "children" indiscriminately, giving them their common meaning, the court is warranted in reading them interchangeably, so as to carry out the testator's intention as disclosed by the entire instrument.

2. SAME—*will construed as passing a base fee.* A devise of real estate to the testator's three sons, their heirs and assigns forever, the survivor to take the shares of the others, and if all three die without issue the property to go to named persons as executory devisees, passes a base or determinable fee, which, after the death of two of the sons without issue, is held by the other as survivor, and in which the executory devisees have no present vested interest but only an expectancy, depending upon the contingency of the death of such survivor without leaving a child.

3. EQUITY—*when equity may interfere to enjoin "equitable waste" by owner of determinable fee.* Equity should interfere, at the instance of the executory devisees, to enjoin "equitable waste" by the owner of a base or determinable fee only when the contingency which is to determine the estate is reasonably certain to happen, and the waste is of a character to charge the owner with a wanton and unconscientious abuse of his rights.

4. SAME—*equity should not enjoin owner of base fee from leasing coal mining privileges.* The opening of a coal mine by the owner of a base fee in the property and the leasing of the mining privilege for a royalty is not "equitable waste" which may be enjoined by the executory devisees, whose interest is but an expectancy, depending upon the contingency of the owner's death without issue.

APPEAL from the Circuit Court of St. Clair county; the Hon. M. W. SCHAEFER, Judge, presiding.

On the 23d day of December, A. D. 1869, Michael J. Gannon made his last will and testament. He died on March 15, 1870. On the 30th day of March, 1870, his will was duly proven and admitted of record in the county court of St. Clair county, Illinois. The testator left a widow and nine children. He died possessed of a large

amount of property, personal and real, and this by his will he distributed among his widow and children. The -clauses of the will applicable to this case are the. second, fourth, fifth, sixth, seventh and eighth, and are as follows:

"*Second*—After the payment of such funeral expenses and debts, I give, devise and bequeath unto my beloved wife, Mary Gannon, the following real estate, to-wit, (describing real estate); to have and to hold the same during her natural life, provided she shall remain my widow, together with all my personal property, consisting of moneys, rights and credits and stock, which latter consists of ten (10) shares in the St. Clair County Agricultural and Mechanical Society, one share in the Urbana Plank Road Company, two shares in the Belleville and St. Louis Rock Road Company and one share in the Westfield Plank Road Company; all my live stock, consisting of mules, cattle, etc.; also all the household furniture and other articles of personal property not herein enumerated or otherwise disposed of in this will, after having disposed of a sufficient amount of my personal property, should it become necessary to dispose of any of the same to pay and discharge the expenses and debts aforesaid; and at her death, or in the event she should again marry, it is my will that the property aforesaid to her bequeathed shall go unto and be equally distributed among my minor heirs, and if no minor heir or heirs are at the time living, then to be equally distributed among Mary L. Gannon and Catherine E. Gannon, Margaret Olivia Gannon, Matthew Gannon, Peter Cuthbert Gannon and Francis G. Gannon, and to their heirs and assigns forever. And it is my will that my wife, Mary Gannon, take the above described real estate in lieu of her dower in all other of my real estate devised by this will.

"*Fourth*—I give, devise and bequeath unto my two sons, Michael J. Gannon, Jr., and Joseph E. Gannon, and unto their heirs and assigns forever, my farm being and

lying in the county of St. Louis and State of Missouri, which lies in the southern limits of Kirkwood, containing eighty (80) acres, be it the same more or less.  It is my will that the same shall not be sold, at least not before the younger of the two,—that is, Joseph E. Gannon, —becomes of lawful age; and should either of them die without issue, then the survivor, his heirs and assigns, to take, own or have the part or portion hereby bequeathed to the one so dying, and in the event both should die without leaving any issue, then it is my will that my surviving heirs (with the exception of my son John T. Gannon, who has had his share,) shall have such property like and like.

"*Fifth*—I give, devise and bequeath unto my daughter Mary L. Gannon, and to her heirs and assigns forever, the following described real estate, to-wit, (describing same.)  And it is my will that if my daughter Mary die without leaving issue, then the property hereby devised to her shall go to Catherine E. Gannon, Margaret Olivia Gannon, Matthew Gannon, Peter C. Gannon and Francis G. Gannon, to their heirs and assigns forever.

"*Sixth*—I give, devise and bequeath unto my two daughters Catherine E. Gannon and Margaret Olivia Gannon, unto their heirs and assigns forever, the following described real estate, to-wit, (describing the same.)  And it is my will that the said property hereby bequeathed shall not be sold until the younger, Margaret Olivia, shall become of lawful age; and in case one should die before attaining her lawful age, the surviving sister shall have and take the other share, to have and to hold the same unto herself, her heirs and assigns forever.

"*Seventh*—I give, devise and bequeath unto my three sons, Matthew Gannon, Peter C. Gannon and Francis G. Gannon, and to their heirs and assigns forever, the following described real estate, (describing by proper description about one hundred and ten acres of land.)  It is my will that upon the death of either of them the surviv-

ing brother or brothers shall take such share like and like, to have and to hold the same to him or them or his and their heirs forever. And in case all three should die without issue, then it is my will that the above mentioned property in this bequest go to Joseph E. Gannon and Mary L. Gannon, their heirs and assigns forever.

"*Eighth*—It is my will that none of my real estate herein devised be sold until the youngest of each bequest and devise, respectfully, become of lawful age, and that until such time or times my executrix in such capacity shall lease same to best advantage, and collect all rents and incomes therefrom, and out of the proceeds shall first pay all taxes and assessments lawfully made on said real estate; and secondly, pay to those heirs which are of lawful age their share, proportionately, of the rent due them under this will on said real estate; thirdly, keep and maintain my minor heirs and children, clothe and feed them; and I enjoin upon her, my executrix, to see that my minor children receive a good English education."

Peter C. Gannon and Francis G. Gannon, two of the sons mentioned in the seventh clause of the will, died intestate in 1872, without issue, neither of them having been married. Matthew, the appellant and the son first mentioned in the seventh clause, is now about forty years old, has been married about nine years, and up to the present has had no child. Mary L. Gannon, mentioned in the seventh clause, was married to one Gilligan, and Joseph E. Gannon died intestate, leaving appellees, Eugenia Peterson, Gracie Allen, Emma D. Blackburn, Katie Gannon, Thomas Gannon and Junie Gannon, his children and only heirs-at-law, and leaving Emma D. Gannon, his widow, who has since married one Blackburn. At the time of the death of Michael J. Gannon, the testator, three of his children were minors, and three of the children of Joseph E. Gannon are minors.

The lands involved in this controversy were devised by clause 7 of the will, and were originally farm lands

with a valuable bed of coal underlying them, which prior to the death of the testator had never been mined nor had there been any mine opened on the same. About the year 1890 Matthew G. Gannon, appellant, opened a coal mine on the lands described in said seventh section and leased the coal in and under said land to George Hippard, doing business under the name and style of Hippard Coal Company, and said Hippard has been mining and removing the coal from said real estate ever since, paying to Matthew G. Gannon a royalty of one-fourth of one cent upon each bushel of coal mined. There have been taken out of said land coal to the value of $50,000, and royalties to the amount of $8000 have been paid to said Matthew G. Gannon. Neither of the appellees, nor the said Mary L. Gannon, (now Gilligan,) mentioned in said seventh paragraph of the will, ever consented to the sinking of the coal shaft or the taking out of the coal. It is agreed between the parties that when the coal is taken out the greatest value of the land is gone.

The bill was filed in the circuit court of St. Clair county by appellees, who are the children of Joseph E. Gannon, who was named in said clause 7 of said will, setting up the above facts, charging that the complainants in said bill, together with Mary L. Gilligan, who was made a defendant therein, are the owners in fee simple of said real estate so long as Matthew G. Gannon has no issue, and will, upon the death of said Matthew G. Gannon without issue, be entitled to the immediate possession and enjoyment thereof, and also charging that said Matthew G. Gannon was guilty of waste in mining and removing the coal from said real estate, and praying for an accounting of the coal already taken out and converted into cash, and for an injunction to enjoin and restrain the commission of any further waste. The answer denied the material allegations in the bill, and a trial was had in the circuit court on an agreed state of facts, being substantially as above set forth, there being practically no con-

troversy as to the facts. The circuit court found and decreed that in mining and removing said coal from said real estate the said Matthew G. Gannon was guilty of waste, and ordered and decreed that he be restrained and enjoined from collecting any royalty for coal taken out in the future, and that said George Hippard be restrained and enjoined from paying any further royalty to said Matthew G. Gannon, and that it was to the interest of all parties concerned to have said mine operated, and the court appointed A. B. Ogle, as receiver, to collect the royalty in the future, and that an account be taken by the master in chancery of the coal already taken out and the royalty collected by Matthew G. Gannon therefor, from which decree Matthew G. Gannon prosecutes this appeal. The daughter Mary L. Gannon, (now Mary L. Gilligan,) mentioned in the last part of section 7 of the will, declined to become a party complainant to the bill and was made a defendant.

WINKELMANN & BAER, (DILL & WILDERMAN, of counsel,) for appellant.

HENRY M. NEEDLES, and HAMILL & BORDERS, for appellees.

Mr. JUSTICE RICKS delivered the opinion of the court:

In this case the seventh clause of the will of Michael Gannon comes before us for construction, and upon that depends the rights of the parties hereto. The first question that is presented is, what estate or interest has Matthew Gannon in the real estate mentioned in that clause of the will? Secondly, have appellees such an estate or interest in said lands, and has appellant committed such waste, as entitles them to an injunction against waste?

The seventh clause of the will, omitting the description of the lands, is as follows: "I give, devise and bequeath unto my three sons, Matthew Gannon, Peter C.

Gannon and Francis G. Gannon, and to their heirs and assigns forever, (describing real estate.) It is my will that upon the death of either of them the surviving brother or brothers shall take such share like and like, to have and to hold the same to him or them or his or their heirs forever. And in case all three should die without issue, then it is my will that the above mentioned property in this bequest go to Joseph E. Gannon and Mary L. Gannon, their heirs and assigns forever." And the proper determination of the first question requires the consideration of the legal effect of the several provisions in that clause of the will, and what meaning shall ' be given to the expression in the last provision of said clause, "and in case all three should die without issue, then it is my will," etc.

It seems clear to us that the first provision in the will gave to the three sons, Matthew, Peter C. and Francis G. Gannon, as tenants in common, the fee to the lands therein described. The testator, in view of the provisions that were to follow, seems to desire to avoid any uncertainty that might arise by a simple compliance with section 13 of our act concerning conveyances, and expressly added the words, "and to their heirs and assigns forever," in the granting clause, and thus made what the common law would constitute a good and perfect conveyance in fee simple; and after describing the lands a provision followed giving cross-remainders to the said three sons, and by the last provision, if the word "issue" can properly be read to mean "children," he made an executory devise to Joseph E. Gannon and Mary L. Gannon, their heirs and assigns forever, of the same lands.

This testator had a large estate, and, as far as we can judge from his will, made an equitable distribution of the same among his children. No devise or bequest was made to anybody or for any purpose other than to his widow and to his children, and in each clause of the will where lands were conveyed such clause concluded with

a provision for the passing of the title to the lands from the devisee or devisees therein named to some other one or more of his children in default of issue by the first taker, so that the testator evinced a desire not only to make a present equitable division of his property, but in each case looked to the possible death of the devisees without issue, and in that event, as far as reasonably could be, he made a re-distribution among his children. In the second clause, after giving a life estate in a large body of land to his wife, he provides that upon her death, etc., the property so bequeathed "shall go unto and be equally distributed among my minor heirs, and if no minor heir or heirs are at the time living, then," etc. In the fourth clause, after making a devise to his sons Michael and Joseph of certain lands in Missouri, he provides that if they should die without leaving issue, "then it is my will that my surviving heirs (with the exception of my son John T. Gannon, who has had his share,) shall have such property like and like." In the fifth clause he devises lands to his daughter Mary L., and concludes with the provision that "if my daughter Mary die without leaving issue, then the property hereby devised to her shall go to Catherine E. Gannon, Margaret Olivia Gannon, Matthew Gannon, Peter Cuthbert Gannon and Francis G. Gannon, to their heirs and assigns forever." And in the eighth clause is a general provision that none of his real estate devised be sold until the youngest of each bequest and devise become of age, and which directs that his executrix lease the same until that time, pay the taxes, "and secondly, pay to those heirs which are of lawful age their share; * * * thirdly, keep and maintain my minor heirs and children, clothe and feed them," etc. The record shows the testator left three minor children. Thus, from a careful reading of each clause of this will it is apparent that this testator used the words "heirs," "issue" and "children" indiscriminately, giving them the common and popular meaning instead of their strict and

legal. When such use of those words is made by the testator the court is warranted in reading them interchangeably, so as to give the will such construction as will best comport with the intention of the testator as drawn from the entire instrument. *Butler* v. *Huestis,* 68 Ill. 594; *Summers* v. *Smith,* 127 id. 645; *Strain* v. *Sweeny,* 163 id. 603; *Carpenter* v. *VanOlinder,* 127 id. 42.

From a reading of the whole will, and in the light of the authorities above cited, to which many more could be added, we feel constrained to hold that by the use of the word "issue," in the last provision of clause 7, the testator meant that children should survive Matthew, Peter C. and Francis G. Gannon, or some one of them, as a condition upon which the fee should become abso-lute, and that upon failure of such children the estate should vest by executory devise in Joseph E. and Mary L. Gannon, thereby giving to Matthew, Peter C. and Francis G. Gannon a base or determinable fee, which is now held by Matthew Gannon, the appellant, as the survivor of the class.    As against such an estate so vested in Matthew Gannon the appellees have no present vested interest.    Their estate is in mere expectancy, depending upon the contingency of the death of Matthew Gannon without child or children him surviving. (*Friedman* v. *Steiner,* 107 Ill. 125.)    He is forty years of age, has been married nine years, and has not now, nor has he had, a child.    He is able-bodied, healthy and strong, and in full possession of all his faculties, mental and physical, necessary for procreation.    The law indulges no presumption that he will die without leaving a child or children. "A possibility of issue is always supposed to exist, in law, unless extinguished by the death of the parties, even though the donees be each of them an hundred years old." (1 Cooley's Blackstone,—3d ed.—book 2, p. 124.)

It is admitted of record in this case that the coal underlying this land constitutes its chief value, and the remaining question is, does the mining of this coal by

appellant constitute such waste and have the appellees such interest as entitles them to maintain this suit. The chancellor found for the appellees; found that appellant, by mining these lands, was committing waste; granted a permanent injunction; appointed a receiver; authorized him to proceed with the mining of the coal and directed that the royalties should be withheld from appellant; what royalty he had received should be paid to the receiver, the money invested and appellant simply to receive the net interest or income during his natural life. Matthew Gannon admits that he has taken out coal to the value of $50,000, and that the royalty at one-fourth of a cent per bushel amounts to $8000. This land was never mined during the life of the testator, nor was there a mine opened on it till done by appellant.

The authorities are uniform as to the definition, duration and extent of a base or determinable fee. They are agreed that it is a fee simple estate,—not absolute, but qualified. Upon the death of the donee his widow has dower; although the contingency may have happened that defeats the estate, and that within the general acceptation and meaning of the term the person seized of such an estate is not chargeable with waste. But there has been engrafted into equity a form of waste not recognized at common law, which is termed "equitable waste," and of which courts of chancery take cognizance and under the theory of which they grant relief to the holders of contingent and executory estates. Equitable waste is defined by Mr. Justice Story to consist of "such acts as at law would not be esteemed to be waste under the circumstances of the case, but which in the view of a court of equity are so esteemed from their manifest injury to the inheritance, although they are not inconsistent with the legal rights of the party committing them." (2 Story's Eq. Jur. sec. 915.) And the learned jurist gives as instances of this class of interference, where the mortgagor fells timber on the mortgaged premises to the

éxtent that the security becomes insufficient; where a tenant for life, without impeachment for waste, pulls down houses or does other waste wantonly and maliciously; and he adds: "For, it is said, a court of equity ought to moderate the exercise of such a power, and, *pro bono publico*, restrain extravagant, humorous waste." And he concludes: "In all such cases the party is deemed guilty of a wanton and unconscientious abuse of his rights, ruinous to the interests of other parties." The definition given above is accepted by most of the text writers and quoted with approval by the courts, and it is this principle the appellees, complainants below, invoke, and insist that under it the decree of the circuit court should be affirmed. It will be observed that no certain criteria are set forth in the definition by which courts may determine when the rule of equitable waste applies, but it is said that *extravagant* and *humorous waste* will be enjoined *pro bono publico*, and in that class of cases where the writ is allowed the party will be deemed guilty of a wanton and unconscientious abuse of his rights. In *Turner* v. *Wright*, 6 Jur. N. S. 647, (29 L. J. Ch. 470,) Lord Chancellor Campbell defines equitable waste to be "that which a prudent man would not do with his own property." This latter statement of the rule is the most comprehensive we have been able to find, and seems to us to be a safe guide in our consideration of the case before us.

So far as we can learn this is the first time this question has come before this court, and we have not been cited to a single American case where the writ against waste was granted against the donee in possession of a fee simple estate at the suit of an executory devisee. It is true that most of the text writers have recognized the right to such a bill and have uniformly referred to English cases for the authority. On the contrary, there is a , very respectable case in a sister State that such a suit will not lie. In *Matthew* v. *Hudson*, 81 Ga. 120, (12 Am. St.

Rep. 305,) the facts were: Mrs. Hudson in 1854 devised
land to a trustee for her son, providing that if the son
should die without issue the trustee was to sell the prop-
erty and divide the proceeds among other children of the
testatrix. The other children brought their bill to con-
strue the will, claiming a contingent remainder, charging
the devisee with waste in cutting timber, and praying
injunction. The court held the son took a fee deter-
minable upon his dying without issue, and that the other
children, executory devisees, could not enjoin him from
committing waste. After a full consideration of the case
the court say: "We think the judgment denying the in-
junction in the present case ought to be affirmed. It is
conceded that if Hudson (the son) took a fee of any sort
he is exempt from the supervision of chancery in respect
to waste, and such undoubtedly is the law. We think
he took a qualified fee."

There are other cases holding that before one can
maintain such an action for waste he must, at the time
the waste is committed, have title to the land. (*Hughlett*
v. *Harris*, 1 Del. Ch. 349; 12 Am. Dec. 104; *Gillett* v. *Tre-
ganza*, 13 Wis. 472.) And while we are not prepared to
say with the Georgia court that chancery will in no case
restrain waste by the holder of a base fee, we hold that
it should only interfere in those cases where it is made
to appear that the contingency which will determine the
fee is reasonably certain to happen, and the waste is of
a character that we can say the party charged is guilty
of a wanton and unconscientious abuse of his rights.
Mr. Washburn, in his treatise on Real Property, (4th ed.
vol. 1, p. 89, sec. 86,) in speaking of the incidents of a
determinable fee, says: "So long as the estate in fee
remains, the owner in possession has all the rights in re-
spect to it which he would have if tenant in fee simple,
unless it be so limited that there is properly a rever-
sionary right in another,—something more than a possi-
bility of reverter belonging to a third person, when,

perhaps, chancery might interpose to prevent waste of
the premises."

With the admitted fact that appellant is but forty
years of age, of good health and possessed of all his
mental and physical faculties for procreation, and with
the presumption of law that he will have issue, the ex-
pectant estate of appellees is no more than a possibility.
As the owner of the fee, appellant owns the soil and all
that is beneath and above it. He owns the coal, and the
other minerals below the sod, as much as the grass that
grows upon it. It appears the coal under this land is
the more valuable part of the estate. ´ The coal industry
of this State is of vast importance and of great extent.
We all know that it is becoming a common practice for
the owners of lands to divide them into practically two
distinct estates, and to sell the coal and retain the sur-
face. The authorities say the writ lies *pro bono publico.*
So far as the public can have any interest in this mat-
ter it lies in the direction of having the mines worked,
the coal put on the market to go into consumption and
swell the traffic and business of its citizens. The most
valuable use of this land is for mining the coal. Appel-
lant has a fee simple estate, and to grant the contention
of appellees we must hold that appellant must not have
the greatest and most beneficial use and enjoyment of it
because it is possible that he may die without leaving
children and his fee be determined. It is also possible
that all of the appellees may die before the appellant,
and yet by the decree appealed from, this valuable es-
tate must be withheld from him who owns it, the funds
arising from it kept under the control of the court, and
appellant allowed the net interest resulting from such
management. Such a course as this is not in unison with
the idea of a fee in appellant, and not in keeping with
the spirit of American institutions that favors the vest-
ing of estates, opposes entailments and endeavors to se-
cure to the citizen the greatest immediate enjoyment of

property consistent with law. The appellees believed that it would be best to have the mine continue, and the chancellor took the same view, and by his order assumed, through the receiver, perpetual supervision over it. In the light of such facts, are we warranted in saying that appellant was making such use of this property "as a prudent man would not do with his own property?" Can we say that it is such extravagant, humorous waste that a court of equity ought, *pro bono publico*, to moderate it? To such contention we cannot assent. Prudent men mine their lands and sell the minerals and ores. They sell the right to others and they lease them upon royalties, and we cannot say it constitutes equitable waste.

The decree of the circuit court is reversed and the cause remanded, with the direction to that court to dismiss appellees' bill.   *Reversed and remanded.*