ALTA W. STISSER *et al.* Appellants, *vs.* CHARLES H. STIS-
SER *et al.* Appellees.

*Opinion filed June 18, 1908.*

1. WILLS—*when words "heirs," "issue" and "children" may be
treated as synonymous.* If it is apparent from the reading of a will
that the testator has used the words "heirs," "issue" and "chil-
dren" interchangeably or synonymously the court is warranted in
construing them in like manner so as to carry out the testator's
intention, which is to be ascertained from the language employed,
giving effect to the words according to the connection in which
they are used.

2. SAME—*when rule in Shelley's case does not apply.* Where
the testator has used the words "heirs," "issue" and "children" in-
terchangeably, a provision giving the use for life, in separate tracts
of land, to three named children, and if either of them "shall die
without issue, then and in that case the properties herein willed to
them, or either of them, or any part thereof, shall revert equally to
the legal heirs of the other children, it being the will of the testa-
tor that the title to the property shall rest and abide in the hands
of the legal heirs of the lawful heirs of the testator," etc., gives a
life estate to the named children with remainder to the children of
the testator's children, if any of the life tenants die without issue.

APPEAL from the Circuit Court of Stark county; the
Hon. L. D. PUTERBAUGH, Judge, presiding.

This is a bill filed in the circuit court of Stark county
to partition certain lands devised by the will of Charles P.
Stisser, deceased, alleging that he died February 23, 1901,
leaving a widow, three sons and one daughter, his only
heirs-at-law; that the wife had a son, George W. Hamil-
ton, by a former husband, who was adopted by the deceased
and seems to have gone by the name of Stisser; that the
will, probated on April 1, 1901, in Stark county, provided,
first, that his debts should be paid; second, that his wife
have the entire income during her life from a certain
eighty acres in Stark county and at her death said land
should go to his step-son, George W. Hamilton, during his
natural life, and at his death to Hamilton's first four chil-

dren, Fred, Charles, John and Carrie; third, that his son
Edgar E. Stisser have a life interest in certain described
lands in Stark county and after his death said land to be
divided equally among said Edgar's children, and also gives
the said Edgar, in fee simple, certain lands in New York;
fourth, "I give and bequeath unto my son Alta W. Stisser
the use, during his natural life, of the following described
land," (describing 160 acres of Stark county land); fifth,
"I give and bequeath unto my son Charles L. Stisser the
use, during his natural life, of 170 acres of land," (describ-
ing 170 acres of Stark county land); sixth, "I give and be-
queath unto my daughter, Nettie D. Stisser, the use, during
her natural life, of 128½ acres of land, (describing 128½
acres of Stark county land); I also give and bequeath unto
my daughter, Nettie, the sum of $3000 in cash, as and for
her own use;" seventh, "it is my will that should either of
the above named children, Alta W. Stisser, Charles L. Stis-
ser or Nettie D. Stisser, die without issue, then and in that
case the properties herein willed to them, or either of them,
or any part thereof, shall revert equally to the legal heirs
of the other children, it being the will of the testator that
the title to the properties under sections No. 4, 5 and 6
herein shall rest and abide in the hands of the legal heirs of
the lawful heirs of the testator hereto;" eighth, the remain-
ing personal property, after payment of expenses, is given
to his three sons; ninth, appoints Edgar E. Stisser, his son,
executor.

The bill alleges that by the will the land in New York
passed in fee to Edgar E. Stisser; that the tract given for
life to testator's wife vested in fee in the first four children
of George W. Hamilton, subject to the respective life es-
tates of the widow and George W. Hamilton; that the land
in Stark county given to Edgar E. Stisser for life vested in
fee, subject to his life estate, in his children. The bill then
alleges that the land described in sections 4, 5 and 6, given
for life to the two sons and one daughter of testator, was

given in fee, by section 7, to the heirs of the heirs of the testator, and that under the rule in *Shelley's case* the child taking the life estate in the respective farm also took the fee in one-fourth of such farm, and the fee in the other three-fourths of such farm, subject to the life estate, vested in the legal heirs of the other three children. The bill further states that the said Nettie D. Stisser on January 5, 1906, died intestate, being a resident of Peoria county, Illinois, leaving no husband or child or descendant of child her surviving, she never having been married, but leaving her mother, Caroline Stisser, and Edgar E. Stisser, Alta W. Stisser, Charles L. Stisser and George W. Hamilton, her brothers, her only heirs-at-law; that Charles L. Stisser was duly appointed administrator of her estate, and that upon the death of said Nettie D. the undivided one-fourth of said tract of land left to her for life by the will of her father, and which by the effect of the will became hers in fee simple, passed by descent to her mother, three brothers and a half brother, and the other undivided three-fourths of the said property that was left by said will to said Nettie D. Stisser descended to the legal heirs of her three brothers, Edgar E., Alta W. and Charles L. Stisser.

A general demurrer was filed to the bill, which, on hearing, the chancellor sustained, holding that the appellants took no part of the fee and dismissing the bill for want of equity. From that decree an appeal has been taken to this court.

Frank Thomas, and J. H. Rennick, for appellants.

V. G. Fuller, for appellees.

Mr. Justice Carter delivered the opinion of the court:

No controversy exists over the facts in this case. All parties seek the construction of the will. The only point of dispute is whether the language of the will brings it within the rule in *Shelley's case*. The question turns on

the construction that should be given to clause 7. The word "section," in the seventh clause of this will, is used with the same meaning as we use the word "clause" in this opinion. If the word "heirs" is used in this clause in its strict technical meaning, then it must be held to be a word of limitation and not of purchase, and the chancellor erred in dismissing the bill.

"One of the established rules for the construction of a will is that the court will look at the circumstances under which the devisor makes his will,—as, the state of his property, of his family, and the like." (*Strain* v. *Sweeny*, 163 Ill. 603; *Johnson* v. *Askey*, 190 id. 58; *Felkel* v. *O'Brien*, 231 id. 329.) By the second clause of the will the deceased left the remainder in fee in certain land, after certain life estates, to the four children of his step-son. By the third clause he left the remainder in fee in certain land to the children of his oldest son. By the fourth, fifth and sixth clauses of the will he gave a life interest in certain lands, respectively, to his two sons, Alta W. and Charles L., and to his daughter, Nettie D. Had there been no further provision as to the property described in said clauses 4, 5 and 6, after the death of either of said three children mentioned in those three clauses the property in which that child had a life interest would have gone, by reversion, to the heirs of the testator; but clause 7 of said will attempts to dispose of this reversion and it thereby became a remainder. We think under said clause the remainder, after the death of either of said life tenants, in the property described in said clauses 4, 5 and 6 was devised, by necessary implication, to the issue of the respective life tenants, if they had issue. (Kales on Future Interests, p. 299, note 2; *Orr* v. *Yates*, 209 Ill. 222; *Young* v. *Harkleroad*, 166 id. 318; *Pinkney* v. *Weaver*, 216 id. 185; 2 Jarman on Wills,—Randolph & Talcott ed.—chap. 17, *563; *Forth* v. *Chapman*, 1 P. Wms. 663.) If it is apparent from a reading of the will that the testator used the words "heirs," "issue" and "children" in-

terchangeably or synonymously, the court is warranted in construing them in like manner, so as to carry out the testator's intention. (*Gannon* v. *Peterson,* 193 Ill. 372; *Butler* v. *Huestis,* 68 id. 594; *Leiter* v. *Sheppard,* 85 id. 242.) The words "heirs" and "issue" are to be given their technical meaning, unless, reading the entire will together, it is plain it was not the intention of the testator to so use them. (*Griswold* v. *Hicks,* 132 Ill. 494; *Vangieson* v. *Henderson,* 150 id. 119.) The intention must be sought from the language of the will. (*Deemer* v. *Kessinger,* 206 Ill. 57.) The force or meaning of words must arise from the connection in which they are used. *Dick* v. *Ricker,* 222 Ill. 413.

Obviously, from the facts set forth in the bill, it is a fair construction of this will that the testator desired the bulk of his property, after the death of his wife, to go to the children of his children and the children of his step-son. Apparently, at the time he drew the will, and at his death, his step-son and his oldest son, Edgar, had children and his two other sons and daughter had none. If the last three afterwards had children, he wished them to inherit the remainder after the life estates of their respective parents, the same as the children of his oldest son and his step-son. If his three youngest children had no issue, did he intend the remainders after the respective life estates of these three children to descend to the "children of his children" or to the "heirs of his heirs?" "Children" is used twice, "issue" once and "heirs" three times in said seventh clause. "Children," where first used in said clause, undoubtedly has the meaning usually given to it in its ordinary, common usage. "Issue," as used in this clause, we think means the same as "children," for it is plain that the testator intended to provide in the will for the children of his three youngest children along the same lines as he did the children of his oldest son and his step-son. We think, also, that it is clear that the word "children," when used the second time in said clause, was used in its ordinary meaning.

Appellants contend, as we understand it, that the last sentence in said clause, namely, "it being the will of the testator that the title to the properties under sections No. 4, 5 and 6 herein shall rest and abide in the hands of the legal heirs of the lawful heirs of the testator," is really a devise as to the remainder over, and must control the meaning to be given to the part of the said clause immediately before, namely, "then and in that case the properties herein willed to them, or either of them, or any part thereof, shall revert equally to the legal heirs of the other children." We can not agree with this contention. We think the words last quoted constituted the devise as to the remainder over, and the last part of said clause quoted above merely attempts, by way of recital, to explain the meaning of the devise theretofore set out. The words "legal" and "lawful" do not modify or change the legal effect of the word "heirs." (*Deemer* v. *Kessinger, supra.*) "Heirs," as used the last time in the said clause, evidently has the same meaning as "children" in the devise itself, and as we have stated, "children" was used there in its ordinary, common meaning. Did the testator, in using the word "other" before "children" in this devise, refer to the three children named in said clause, or did he include his oldest son, Edgar, as one of the "other children?" Considering the wording of this devise alone, there might be some doubt on this question, and the writer of this will might have had that obscurity in mind when he drafted the last explanatory sentence. It is evident from the reading of the entire clause that the testator intended to include all of his remaining children but not his step-son. Manifestly, taking the entire will together, he wanted the remainders in question to go to the children of his children. His children and grandchildren were the natural objects of his bounty. If he had intended the word "heirs" to be used in the technical sense, it hardly seems possible that he would have used "children" and "issue" in this clause in the manner he did. We are inclined

to hold that the testator used the words "children," "issue" and "heirs" interchangeably in this will, as meaning the same thing, to-wit, "children," in the ordinary sense of the word, and that if either of the three youngest children of the testator died without issue he wished the remainder in the property in which such child had a life estate to descend to the children of his children.

There is some argument in the briefs that an executory devise limited to take effect after death without issue should be held void because the contingency is too remote, the argument being that the devise would not take effect until after an indefinite failure of issue. A full discussion of this subject will be found in Kent's Commentaries, (vol. 4,— 12th ed.—*281, *282, inclusive,) and Kales on Future Interests, (chap. 8.) We deem it unnecessary to discuss this subject, as this court has frequently decided that such a limitation would be valid. (*Kellett* v. *Shepard,* 139 Ill. 433; *Summers* v. *Smith,* 127 id. 645; *Healy* v. *Eastlake,* 152 id. 424; *Smith* v. *Kimbell,* 153 id. 368; *Seymour* v. *Bowles,* 172 id. 521; *Johnson* v. *Askey, supra; Strain* v. *Sweeny, supra; Ortmayer* v. *Elcock,* 225 Ill. 342.) Moreover, if the words in this will "without issue" are construed to mean "without children," then it cannot be argued that this is an indefinite failure of issue. Kales on Future Interests, sec. 202, and note; 4 Kent's Com. (12th ed.) *278, and notes.

The words in dispute in the seventh clause of the will being construed to mean "children," the rule in *Shelley's case* does not apply. (*Connor* v. *Gardner,* 230 Ill. 258; 4 Kent's Com.—12th ed.—*230.) The construction of the will by the chancellor was therefore correct.

The decree of the circuit court will be affirmed.

*Decree affirmed.*