DETERMINED IN THE

## THIRD DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEAR 1917.

---

## C. W. McComb, Administrator, et al., Appellants, v. Robert H. Morford and Charles R. Dunbar, Appellees.

1. WILLS—*how will drawn by layman construed.* In construing a will drawn by a layman, the courts are not so strongly bound by the technical meaning of legal terms employed therein as they are in the case of a will drawn by one familiar with such terms and will enlarge, restrict or ignore the technical meaning when by so doing the manifest intent of the testator can be given effect.

2. WILLS, § 266*—*when word "heirs" construed as meaning "children."* In construing a will drawn by a layman, where the word "heirs" has been used interchangeably with "children" or in such connection as to make it apparent that "children" was intended, it will be so construed.

3. WILLS, § 266*—*when word "heirs" construed as meaning "children."* Where, in a will drawn by a layman, it is provided that the estate "shall be divided into five equal shares, each of my before enumerated children to receive one share and the heirs of my children now deceased shall receive collectively the share their deceased parents would have received," the word "heirs" will be construed as meaning "children."

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

(1)

4. WILLS, § 272*—*what constitutes a gift to a class.* Where a will directs that the estate be divided share and share alike between "my children as follows: Joseph P. Baker, Christie Ann Critchfield, Leatha Scott, the heirs of Almira Dunbar" and the heirs of another child, the gift to such "heirs" is a gift to a class.

5. WILLS, § 273*—*what is general rule as to vesting of bequests made to a class.* It is the general rule that, unless a different intention is manifested, where a bequest is to a class, all the members of that class who are alive when the testator dies are included and the bequest then vests in them, the enjoyment only being postponed.

6. WILLS, § 391*—*when will construed as postponing vesting of bequests until after death of widow.* Where a will, after first directing that the real estate be sold and the proceeds divided, later provides that it shall not be sold until after the death of his wife and also that if any of his living children shall die "before the time of settlement" of the estate, which it elsewhere provides shall not be until after the death of the wife, the children of such deceased parent shall take collectively the share the deceased child would have taken if living, it is to be construed as postponing the vesting of all the bequests until after the death of the testator's widow.

7. WILLS, § 384*—*when devisees of remainder have vested interest after death of widow.* The devisees of the remainder after the death of the testator's widow are not to be construed as having a vested interest until after her death, where there are no express words giving or devising anything to any one in that clause of the will, but the disposition of the property there made is by way of direction to the executor as to disposing of the proceeds of the sale of realty to be made after the widow's death.

8. WILLS, § 262*—*when presumed that widow takes as heir under statute and not under will.* Where a will, after providing for certain bequests to the testator's wife, provides that "in addition I bequeath to her, full statutory dower in all my property," the widow is presumed to take as heir under the statute and not under the will.

9. WILLS, § 273*—*when will construed as allowing only heirs alive at time of distribution to take shares of estate.* Where a testator provides that after the death of his wife his property is to be divided share and share alike between his children "as follows: Joseph P. Baker, Christie Ann Critchfield, Leatha Scott, the heirs of Almira Dunbar and the heirs of Kittie Samuels," the "heirs" of such children who are entitled to take are those who

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

McComb v. Morford et al., 208 Ill. App. 1.

are alive at the time of the death of the testator's widow when the estate is first ripe for distribution.

Appeal from the Circuit Court of McLean county; the Hon. SAIN WELTY, Judge, presiding. Heard in this court at the April term, 1917. Affirmed. Opinion filed October 11, 1917.

ADLAI H. RUST, for appellants.

STERLING, LIVINGSTON & WHITMORE, for appellees.

MR. PRESIDING JUSTICE GRAVES delivered the opinion of the court.

The will of Robert H. Baker, now deceased, is as follows:

"In The Name of God, Amen.

"I, Robert H. Baker, of the town of Heyworth, in the County of McLean and State of Illinois, being of sound mind and memory hereby make, publish and declare this to be my last will and testament hereby revoking all former wills made by me.

"1st. I direct that all my debts of whatsoever nature be fully paid and discharged, including funeral expenses.

"2nd. To my wife, Mary Baker, I bequeath absolutely and in fee simple the following real estate: Lots 5, 8 and 9, in Block 5 in Frisby's addition to the town of Heyworth, being the place we now reside. Also all the household goods therein. In addition I bequeath to her, full statutory dower in all my property, real and personal or mixed.

"3rd. After the death of my wife, Mary Baker, I direct that all my property, real and personal shall be converted into cash as soon as the same can be done without loss to my estate and be divided share and share alike between my children as follows: Joseph P. Baker, Christie Ann Critchfield, Leatha Scott, the heirs of Almira Dunbar and the heirs of Kittie Samuels. That is to say that my entire estate shall be divided into five equal shares. Each of my before enumerated children to receive one share and the heirs of my children now deceased shall receive collectively the share

their deceased parents would have received or if any of my children now living shall have died before the time of settlement then their heirs shall receive collectively the share designated for their parents. For the purpose of carrying out the provisions of this my last will and testament I hereby nominate and appoint my son Joseph P. Baker to be executor of my will and hereby empower him and especially invest him the full authority to sell all of my real estate at public or private sale as he may deem best and to make deeds and conveyances for the same with full power to sign all deed, etc., necessary for the carrying out of these provisions. In case of his refusal to qualify or of his death then I invest my administrator *de bonis non* with the will annexed with the same authority.

"I direct that all my real estate situated in the County of McLean and State of Illinois shall be held by my estate during the life of my wife.

"As I own at the present time certain lands in the County of Adair in the State of Iowa which I desire to dispose of. In case I should still own said lands at the time of my decease, it is my will that said lands in the County of Adair in the State of Iowa be sold as soon as the same can be done without loss to my estate and the proceeds to be divided at once among my children or their heirs as before directed. My wife reserving her statutory dower. In witness whereof, I have affixed my signature and seal this 4th day of March, A. D. 1902.

Robert H. Baker    (Seal)"

Attestation clause.

The controversy in this case arises over the disposition of the one-fifth part of the estate which Almira Dunbar would have received if she had been alive as provided by the third clause of the will above quoted. At the time of the death of the testator, Almira Dunbar was dead and her only children and heirs at law then in existence were Flossie Dunbar, Charles R. Dunbar and Robert H. Morford. After the death of the testator and before the death of his wife, and consequently before the settlement of his estate, Flossie Dunbar died,

leaving her father Benjamin G. Dunbar, her brothers Robert H. Morford and Charles R. Dunbar, and her half sister Dolores Dunbar, as her only heirs at law.

This is an appeal from an order of distribution entered by the Circuit Court in the matter of the estate of Robert H. Baker, deceased, where the matter came by appeal from the County Court.

The County and Circuit Courts both held that Robert H. Morford and Charles R. Dunbar, who were at the time of the death of the widow of the testator the only living children of Almira Dunbar, should have the one-fifth part of the estate of Robert H. Baker, deceased, which he directed should be paid to "the heirs of Almira Dunbar," and that Benjamin G. Dunbar, the father of Flossie, and Dolores Dunbar, the half sister of Flossie, had no interest in the estate. The correctness of that order is questioned by this appeal.

The will bears on its face indubitable evidence of its having been made by a layman and a novice at drawing wills, and that he did not comprehend the meaning of all the words he used. In construing wills that are so drawn, courts feel less bound by the niceties of meaning of technical words used than they do when the same words are used by persons accustomed to their use and familiar with their meaning, and often enlarge, restrict or ignore the technical meaning when by so doing the manifest intent of the testator can be given effect. So where the word "heirs" has been used interchangeably with "children," or in such a connection as to make it apparent that by it "children" was intended, it will be so construed. *Fishback v. Joesting,* 183 Ill. 463; *Kalies v. Ewert,* 248 Ill. 612; *Butler v. Huestis,* 68 Ill. 594-602; *Gannon v. Peterson,* 193 Ill. 372-379; *Dick v. Ricker,* 222 Ill. 413-417; *Stisser v. Stisser,* 235 Ill. 207-212. In this respect greater latitude is indulged in, in construing wills than is allowed in construing deeds. *Butler v. Huestis, supra.*

In the clause of the will above quoted there is one

expression in which it is certain the word "heirs" was used where "children" was meant, and that is the particular part of the clause in which the testator is undertaking to make clear who shall have the one-fifth share of Almira Dunbar. The language used is: "That is to say that my entire estate shall be divided into five equal shares, each of my before enumerated children to receive one share and the *heirs* of my children now deceased shall receive collectively the share their deceased *parents* would have received." By the use of the word "parents" in the latter part of the clause in identifying the share they are to receive, the identity of the beneficiaries is unmistakably shown to be the "children" of such *parents* instead of the more general class of *heirs*. A similar expression was held to have that effect in *Madison v. Larmon*, 170 Ill. 65.

The gift to the children of Almira Dunbar was a gift to a class. They were described in the will as the "heirs," meaning the children, of Almira Dunbar, and are not mentioned by name. As to such bequests the general rule is that unless a different intention on the part of the testator is manifest, all the members of that class who are alive when the testator dies are included, and the bequest then vests in them, the enjoyment thereof only being postponed. *Clark v. Shawen*, 190 Ill. 47. But in this case the purpose of the testator to postpone the vesting of all bequests until after the death of the widow is apparent. In the first place he directs that all his real estate be sold and the proceeds be divided, which plainly is a devise of personal property. He then provides in a later clause that this real estate shall not be sold until after the death of his wife. The clear intent of the testator to postpone the conversion of the real estate into personal property, until after the death of his wife is manifest.

Next he provides that if any of his living children shall die "before the time of settlement" of the estate, which elsewhere he provides shall not be until after the

death of his wife, the children of such deceased parent shall take collectively the share the deceased child would have taken if he or she had lived. It cannot be doubted that the purpose and intent of the testator was, as gathered from the whole will, to so dispose of his property that such of his children as were then alive and the children, who were then alive, of such of his sons and daughters as were then dead, should have his property, or in other words, his evident intent was to so dispose of his property that it should remain in the hands of his blood descendants as long as he could control it. To effectuate that purpose he postponed the vesting of the gifts to a time when those who were to take them, which he provides shall be his children and the children of his deceased children, should have immediate possession.

In *Drury v. Drury,* 271 Ill. 336, there was a clause in the will containing much the same provisions as the clause under consideration, and there was a gift to a class, to take effect at the death of the life tenant. The court said:

"There was no language in the will which confined the gift to great-grandchildren in existence at the testator's death, and the rule is that where the gift is not in terms immediate and so confined and a gift to a class is postponed pending the termination of a life estate, those members of the class and those only, take who are in existence at the death of the life tenant. * * * The gift to the great-grandchildren was, in terms, postponed pending the termination of the life estate intervening between the death of the testator and the time when he provided the same should vest upon a condition to be then ascertained, and only those took who were in existence at the termination of the life estate. (*Handberry v. Doolittle,* 38 Ill. 202; *Brewick v. Anderson,* 267 id. 169; 40 Cyc. 1477; *Webber v. Jones,* 94 Me. 429; *Satterfield v. Mayes,* 11 Humph. 58.) Bessie May Drury has no interest in the property, and upon the death of the life tenant it vested in the great-grandchildren of Richard Drury who were then living. * * * "

We are aware that there are many authorities that are at first blush in apparent conflict with the above quotation, but we think they can all be distinguished on the facts from the case at bar, and from the cases cited.

There is still another reason why the devisees of the remainder after the death of the widow should not be construed to have a vested interest until after the death of the widow, and that is, there are no express words giving or devising anything to any one in the clause of the will under consideration. The disposition of the property there made is by way of direction to the executor as to how to distribute the proceeds of the sale to be made after the death of the testator's widow. Under that sort of language the distributees acquire no vested interest in the property until the time for distribution arrives. *McCartney v. Osborn*, 118 Ill. 403; *Kingman v. Harmon*, 131 Ill. 171; *Bates v. Gillett*, 132 Ill. 287; *Strode v. McCormick*, 158 Ill. 142; *Dee v. Dee*, 212 Ill. 352; *Smith v. Chester*, 272 Ill. 428, citing with approval *Thompson v. Adams*, 205 Ill. 552. In the last case cited the court said, on page 559:

"It will be observed that the will contains no words devising or bequeathing property to any of the descendants of the testator, except words directing distribution to them upon the remarriage or death of the widow. This is an indication that the testator did not intend the title to the property in remainder to vest until the death or remarriage of the widow. (*Ebey v. Adams*, 135 Ill. 80.)"

And see *Ayars v. Doyle*, 166 Ill. App. 414-421.

There is an exception to the foregoing rule which prevents it from being of universal application, and that is when the distribution is postponed for the purpose of letting in a life estate the gift to the remainderman vests at once. *Carter v. Carter*, 234 Ill. 507. This exception referred to in the *Carter* case, *supra,* has, however, no application to the case at bar because the postponement in this case could not possibly have been for the purpose of letting in a life estate.

McComb v. Morford et al., 208 Ill. App. 1.

Under the will in this case the wife was given certain lands and personal property to be hers absolutely, which gifts the testator made plain by the further provision of his will that they were not to be in lieu of dower, for he added, at the close of the portion of the will by which these gifts were made, the following language: "In addition I bequeath to her, full statutory dower in all my property, real and personal or mixed." He could as well have said, "the foregoing bequests are not in lieu of but an addition to her statutory right of dower." Where by a will the testator provides that his estate or any part of it shall be distributed according to the provisions of the statute, the beneficiary is presumed to take as heir under the statute and not under the will. *In re Taylor's Will*, 55 Ill. 252; *Welch v. Wheelock*, 242 Ill. 380. It follows that whether the rights of other beneficiaries named in the will were vested at the death of the testator or postponed to the death of the widow was a matter in which the widow was in no way concerned, and she could in neither event be benefited or harmed and the testator knew it, or was presumed to know it.

It is therefore certain that the postponement of the vesting of the gifts to others than the widow was not done for her benefit. Flossie Dunbar, having died several years before the death of the widow of the testator, the only living children of Almira Dunbar at that time when the estate was for the first time ripe for distribution, and the only representatives of the class to which the share of Almira Dunbar was to be distributed, were Robert H. Morford and Charles R. Dunbar, and they were entitled to the fund in question. That was the conclusion the Circuit Court came to and the order appealed from directed the distribution to be made to them. The order of the Circuit Court is therefore affirmed.

*Affirmed.*