JOHN SCHAEFER *et al.*

*v.*

LIBBY SCHAEFER.

*Filed at Springfield May 11, 1892.*

1. WILLS—*rule of construction.* The fundamental rule in the construction of wills is to ascertain and effectuate the intention of the testator, provided such intention is not inconsistent with the rules of law; and in the ascertainment of such intention the whole scope and plan of the will should be considered, and its various provisions compared with each other.

2. SAME—*construction of words—surplusage.* Where a testator devised real estate to a daughter "in trust, for her sole use and benefit, and of her children, and there children thereafter," but created no trust, it was *held,* that the words "in trust" should be rejected as surplusage, and that the word "their" should be substituted for the word "there," which was evidently written by mistake or ignorance of the scrivener.

3. SAME—*devising a life estate—whether it creates a trusteeship.* A trusteeship can not be predicated of one who holds for life, only, and for his or her own sole use and benefit, when the instrument which gives the life estate also gives the remainder to others in their own right, and no duty other than those that grow out of their legal relation is imposed upon the life tenant.

4. SAME—*construed—whether devise in fee or for life.* A testator's will read as follows: "I do bequeath to my beloved daughter, B., the following property, (describing the same,) in trust, for her sole use and benefit, and of her children, and there children thereafter. But in the event that my daughter ＊ ＊ ＊ should die and leave no children as

22—141 ILL.

heirs to the within mentioned property, then it is my will and desire that all of said property shall go to my brother, J., and to his heirs," etc.: *Held,* that the words "her children," were apt words of purchase, and manifest that an estate for life, only, was given to B., and that a remainder in fee was given to the children of B.

5. A testatrix devised to her only daughter certain real property for her sole use and benefit, and of her children, (that is, the daughter's children,) and their children thereafter, and also provided that if the daughter should die leaving "no children as heirs," then the property should go to a brother of the testatrix. At the death of the testatrix the daughter had three children, and afterward another child was born to her: *Held,* that the word "children" (meaning those of the daughter) was used to describe a class to take as purchasers, and when last used it was intended to mean "heirs," so that the devise should be to the daughter and to her children in fee.

6. Same—*rule in Shelly's case—applies when.* The rule in *Shelly's case* applies only to limitations in which the word "heirs" is used, and under our statute does not apply to an estate tail. When the limitation is to the heirs, it is, in legal intendment, the designation of a class or denomination of persons who are to take in succession from generation to generation, and such words operate as words of limitation of the estate, and not as words of purchase, and the remainder is executed in possession by giving the ancestor the fee.

7. But when the words "issue," "lawful issue," "sons," "daughters" or "children" are used instead of the word "heirs," then such words are words of purchase and not of limitation, and the ancestor takes only a life estate, and the sons, daughters or children take the remainder by purchase, for the reason that such words are the designation of persons to take originally in their own right.

8. Same—*perpetuities.* The rule prohibiting perpetuities requires that the absolute ownership of property must vest in some one within the period of a life or lives in being and twenty-one years and nine months thereafter. When a limitation of the fee of land is such that it may be possible that it may not vest within the limit fixed by the rule against perpetuities, the devise will be void for remoteness.

9. Remainder—*will vest when.* Where a devise is made to one for life, with remainder in fee to his or her children, the remainder will vest, immediately on the death of the testator, in the children then in being, but it will open up upon the subsequent birth of other children of the tenant for life, so as to let them in as remainder-men ; and when the remainder once vests, a devise over in case of the death of the life tenant without children will come to an end.

10. Same—*the law favors vested.* The law favors vested rather than contingent remainders.

11. CONSTRUCTION—*of like words in the same sentence.* Where one and the same word is used twice or more in the same clause or sentence, the same signification is ordinarily to be placed upon it in each instance. But such will not be the case where it is apparent, from the context, that the word is used in different senses.

APPEAL from the Circuit Court of Cook county; the Hon. OLIVER H. HORTON, Judge, presiding.

Mr. J. K. WILSON, for the appellants:

The fundamental rule for the construction of wills is, that the intention of the testator shall govern if it can be ascertained. *Rountree* v. *Talbot,* 89 Ill. 246; *Welsch* v. *Bank,* 94 id. 191; *Johnson* v. *Johnson,* 98 id. 564; *Lunt* v. *Lunt,* 108 id. 307.

In order to carry out the intention of the testator when ascertained, the words "heirs," "issue" and "children" may be construed interchangeably. *Butler* v. *Huestis,* 68 Ill. 594.

The rule in *Shelly's case* has no application in this case. *Baker* v. *Scott,* 62 Ill. 86.

Mr. R. B. BACON, for the appellee:

A devise of the income from land for the use of the devisee, or of the rents and profits, is equivalent to a devise of the land itself. *Ryan* v. *Allen,* 120 Ill. 648.

The conditions necessary in *Shelly's case* are: First, a freehold must be devised; second, the estate of freehold must be taken by the same instrument which contains the limitations to the heirs; and third, the interest devised to the ancestor, and limited to the heirs, must be of the same quality. *Ryan* v. *Allen, supra.*

The common law in regard to perpetuities prevails in this State. *Waldo* v. *Cummings,* 45 Ill. 426.

The limitation to the children of appellee's children is too remote, even though there might be a possibility of its being terminated within the prescribed time. The doctrine is expressed in 2 Redfield on Wills, (2d ed.) page 571, as follows:

"The question of remoteness, as we have already intimated, is to be determined with regard to possible events, and not to those which actually occur. If, therefore, the limitations are to such persons or upon such events that it *may* extend beyond the allowed limit, the devise will be void for remoteness, notwithstanding the fact that it may or does occur within the limit allowed by law."

If the devise is void, then the realty so devised or attempted to be devised becomes intestate property, and as such it would descend to the appellee as the sole and only heir of the testatrix, Ann Welsh. *Mining Co.* v. *Gill,* 111 Ill. 541; *Hale* v. *Hale,* 125 id. 399.

In case of doubtful construction the court should favor the heir. 1 Redfield on Wills, 434, 435; *White* v. *Page,* 10 Wheat. 213.

Mr. JUSTICE BAKER delivered the opinion of the Court:

The provision of the will of Ann Welsh, deceased, that is involved in this chancery suit, is in substance as follows:

"I do bequeath to my beloved daughter, Bridget Fitzgerald, (confirmed as Libby Fitzgerald,) and now the wife of John Shaffer, the following property: The house and lot known as 609 Fulton street, Chicago, etc., also the house and lot known as 229 Johnson street, etc., in trust for her sole use and benefit, and of her children, and there children thereafter. But in the event that my daughter, Bridget Shaffer, should die and leave no children as heirs to the within mentioned property, then it is my will and desire that all of said property shall go to my brother, Jeremiah Coughly, in the parish of Kilkenmore, county of Cork, Ireland, and to his heirs and assigns forever."

It appears from the record that the testatrix died on August 4, 1885, and left surviving her, as her sole and only heir-at-law, her daughter, Libby Schaefer, the appellee herein. At the time of the death of the testatrix the appellee was the

mother of three children, and subsequently she gave birth to another child, and all four of said children are still living.

We have frequently announced that the fundamental rule in the construction of wills is, to ascertain and effectuate the intention of the testator, provided such intention is not inconsistent with the rules of law, and that in the ascertainment of such intention the whole scope and plan of the will should be considered, and its various provisions compared one with another. The will evidently was drawn by a person somewhat illiterate, and also unskilled in the use of technical language. The devise of the houses and lots to appellee is expressly stated to be "in trust." No trust, however, is created by the will. A trusteeship can not be predicated of one who holds for life, only, and for his or her own sole use and benefit, and the instrument which gives the life estate also gives the remainder to others in their own right, and no duty, other than those that grow out of their legal relation, is imposed upon the life tenant. Said words were probably used under an erroneous idea that when an estate is given to the ancestor for life, with a vested remainder in fee to his or her children, such ancestor will have power to alienate the fee, unless it is stated that the devise is in trust. The words, then, may be rejected as surplusage. *Utile per inutile non vitiatur.*

The devise to appellee is "for her sole use and benefit, and of her children, and there children thereafter." It goes without saying that the adverb *there* was by mere mistake or ignorance in the scrivener used for the pronoun *their,* and that the latter should be substituted for the former. Said word is immediately followed by the word "children." The word "children," in both its technical and its general sense, is used as a description of persons, and in its technical sense is a word of purchase and not a word of limitation. If that word, as found in the phrase, "and their children thereafter," is given that meaning it would render the devise void. The rule prohibiting perpetuities requires that the absolute ownership of

property must vest in some one within the period of a life or lives in being and twenty-one years and nine months thereafter. (*Waldo* v. *Cummings*, 45 Ill. 421.) A limitation of the fee to the children of appellee's children would be too remote. It would be possible that the fee would not vest within the limit fixed by the rule, and where such possibility exists, the devise is void for remoteness. 2 Redfield on Wills, (2d ed.) p. 521. But does it clearly appear that in the phrase, "and their children thereafter," the testatrix used the word "children" in the sense of "heirs?" If so, it should be given that signification.

The law favors vested rather than contingent remainders. The principal and primary objects of the regard and bounty of the testatrix were her daughter and the children of that daughter then in being, and it is improbable that she intended to postpone the vesting of the remainder until the termination of a life estate in the children for the benefit of unborn and unknown heirs, and to the prejudice of her grandchildren then living. (*Bowers* v. *Porter*, 4 Pick. 198.) But that it was not the intention of the testatrix that the remainder should remain in abeyance until the birth of great-grandchildren, is perfectly clear upon the face of the will. The last sentence of the devise provides: "In the event that my daughter, Bridget Shaffer, should die and leave no children, * * * then it is my will and desire that all of said property shall go to my brother, Jeremiah Coughly, * * * and to his heirs and assigns forever." It is manifest from this language that it was the intention of the testatrix that immediately upon the death of her daughter the fee simple title to the property should be executed in possession, and such intention is wholly inconsistent with any theory that the plan of the will was a life estate in the daughter, remainder for life to the children of such daughter, and remainder over, in fee, to the children of such children. It must therefore be presumed, in order to give effect to the intention expressed in the last sentence of

the devise, that the word "children," found in the phrase "and their children thereafter," should be read in the sense of "heirs."

The whole clause is, "for her sole use and benefit, and of her children, and their children thereafter." The word "children" occurs twice in said clause. Where one and the same word is used twice or more in the same clause or sentence, the same signification is ordinarily to be placed upon it in each instance. Here, however, we find it otherwise. As we have already said, where it last occurs it is to be interpreted as meaning "heirs." And this brings us to the claim made by appellee that the will devises a freehold to her, and that by the same instrument an estate is limited by way of remainder to her heirs in fee, and that therefore, under the rule in *Shelly's case,* she takes the whole estate in fee simple.

The rule in *Shelly's case* applies only to limitations in which the word "heirs" is used. In this State and under our statute it does not apply to an estate tail. (*Baker* v. *Scott,* 62 Ill. 86 ; *Butler* v. *Huestis,* 68 id. 594.) When the limitation is to the heirs, it is, in legal intendment, the designation of a class or denomination of persons who are to take in succession from generation to generation, and said words operate as words of limitation of the estate, and not as words of purchase, and the remainder is executed in possession by giving the ancestor the fee. But when the words "issue," "lawful issue," "sons," "daughters" or "children" are used instead of the word "heirs," then such words are words of purchase and not of limitation, and the ancestor takes only a life estate, and the sons, daughters or children take the remainder by purchase, and for the reason that such words are the designation of persons to take originally in their own right. See *Baker* v. *Scott, supra,* and authorities there cited.

The word here used is "children,"—*i. e.,* the children of the daughter of the testatrix. Necessarily there is no place for the rule invoked, unless it can be clearly ascertained that by

the word "children," where it first appears in the devise, the testatrix meant "heirs." The contention is, that the reasonable interpretation of the will requires that said word "children," in the expression "and of her children," should be construed as "heirs." Such claim is based on the circumstance that the last sentence of the will provides, "in the event that my daughter * * * should die and leave no children as heirs to the within named property, then it is my will and desire that all of said property shall go to my brother, Jeremiah Coughly, and to his heirs." The stress is laid upon the phrase, "as heirs." Is the language thus employed by the testatrix clearly indicative of an intention to limit the remainder to the heirs, and not to the children of her daughter? We think not. She first devised the property to her daughter and the children of such daughter, and subsequently in the same instrument said, that if the daughter "should die and leave no children as heirs, then," etc. As we have already intimated, the whole scope and plan of the will snows that the children of her daughter, as well as the daughter herself, were primary and principal objects of her bounty. The words "as heirs," in the provision last above quoted from the will, when read in the light of the context and of the posture of the facts existing when the will was framed, indicate merely that neither the testatrix nor the scrivener comprehended the legal and technical distinction between a title by purchase and a title by descent, and erroneously spoke of them as heirs, when, in fact, the devise gave them an original title in their own right. In the prior part of the will the devise is to appellee, for her sole use and benefit, and for the sole use and benefit of her children, and their heirs thereafter. The words "her children," are apt and technical words of purchase, and manifest that an estate for life, only, was given to appellee, and that a remainder in fee was given to her children. Further evidence of the intention to give said children the remainder in fee is amply afforded by the provision that if appellee "should die and *leave no children,*

\* \* \* then \* \* \* said property shall go to my brother, Jeremiah Coughly, \* \* \* and his heirs and assigns forever." The necessary implication from this language is, that if there were children of appellee, then, primarily, the property should go to them and to their heirs and assigns forever. The very phrase relied upon by appellee is, "*children* as heirs," and this description applies only to children, and excludes the general heirs, and is corroborative evidence of an intention that the children, as distinguished from the heirs, of appellee, should take the fee. Besides this, the collateral contingent remainder to Jeremiah Coughly and his heirs, in fee, affords positive proof that it was not the intention to limit the first remainder in fee to the heirs, generally, of appellee. The inapt use of the words "as heirs," inserted in the will, can not be permitted to contravene the clearly ascertained intention of of the testatrix.

It seems plain that under the will appellee took only a life estate, and that her children took a remainder in fee. Three of these children were in being when Ann Welsh, the testatrix, died. Said remainder immediately vested in them, and became a vested remainder. It subsequently opened up to let in the after-born child. Upon the vesting of the remainder in fee in the children of appellee the contingent remainder over to Jeremiah Coughly came to an end.

The decree of the court below awarded to appellee the two houses and lots in fee simple absolute. Since the rule in *Shelly's case* has no application to the case at bar, and since the devise was not obnoxious to the rule against perpetuities, and the real estate did not therefore descend to appellee as the sole heir of Ann Welsh, the decree was erroneous. It is reversed. The cause is remanded for further proceedings in conformity with this opinion.

*Decree reversed.*