MARGARET DICK *et al.*

*v.*

HENRY F. J. RICKER, Exr. *et al.*

*Opinion filed October 23, 1906.*

1. REAL PROPERTY—*deed construed as creating an estate tail.* A deed granting to the grantor's daughter, "and to the children of her body begotten," certain described land, "to have and to hold the same to the use" of the said daughter "for and during the term of her natural life, and after her death to the use of the children of her body begotten, in fee tail forever," creates an estate tail, which, under section 6 of the Conveyance act, conveys to the daughter an estate for life with remainder in fee simple to her children.

2. SAME—*word "children" may be given meaning of "heirs."* The word "children," used in a deed or will, will be given the meaning of the word "heirs" whenever the context requires it in order to carry out the intention of the grantor or testator.

3. SAME—*when words "to the use" are of no effect.* Where the legal and equitable estate are in the same person under a deed or will, the words "to the use" of such person are of no effect and no trusteeship can be predicated thereon.

APPEAL from the County Court of Adams county; the Hon. CHARLES B. McCRORY, Judge, presiding.

This is a proceeding brought by appellee, as executor of the last will and testament of Mary G. Williams, deceased, to sell certain real estate in Adams county. Whatever title Mary G. Williams had in the premises sought to be sold was derived through a deed dated September 23, 1878, of which the portion bearing on the question in controversy is as follows: "Know all men by these presents, that I, Thomas Redmond, of the city of Quincy, * * * have granted, bargained and sold, and by these presents do bargain, grant, sell, convey and confirm, *unto my daughter, Eliza J. Williams, and to the children of her body begotten,* the following described lots or tracts of land, [here describing the property.] To have and to hold the same *to the use of the said Eliza Williams for and during the term of her natural life, and after her death to the use of the children of her body begotten, in fee tail forever."* At the time of the execution and delivery of this deed by Thomas Redmond, Eliza J. Williams was the lawful wife of one John H. Williams, and Mary G. Williams, her daughter, was then five months old and was then the only child alive of her body begotten. Subsequently a son, John Williams, Jr., was born to Eliza J. Williams, but died in his mother's lifetime still an infant, without children. She died prior to the death of her daughter, Mary G. Williams, leaving no husband and leaving Mary G. Williams as her only heir-at-law. Mary G. Williams died without ever having any children of her body begotten. The county court found that Mary G. Williams died seized in fee simple of a full and complete title of the real estate described in this deed and decreed that the same should be sold to pay debts. The cause was thereupon appealed to this court.

HOMER M. SWOPE, and EMMONS & EMMONS, for appellants.

WILSON & WALL, and VANDEVENTER & WOODS, for appellee Ricker.

T. J. CONDON, for other appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

As we understand the contention of appellants, it is that the deed vested in Eliza J. Williams simply an ordinary life estate; that Mary G. Williams was vested with the title to said real estate as the first holder under the fee tail estate, and as she died without any children or heirs of her body, the title to said real estate reverted, as one of the incidents of an estate tail upon failure of competent takers, to the grantor, his heirs or devisees. Appellants claim as heirs of Thomas Redmond.

If an estate tail was created by this deed, the word "children," both in the granting and the *habendum* clauses, must be construed to mean "heirs." The authorities have always held that in order to create this estate, words of inheritance as well as words of procreation are necessary. Blackstone says: "As the word *heirs* is necessary to create a fee, so, in further limitation of the strictness of the foedal donation, the word *body* or some other words of procreation are necessary to make it a fee tail and ascertain to what heirs in particular the fee is limited. If, therefore, either the words of inheritance or words of procreation be omitted, albeit the others are inserted in the grant, this will not make an estate tail." (Sharswood's Blackstone, book 2, p. *115.) To the same effect are 1 Washburn on Real Prop. (4th ed.) *75; *Butler* v. *Huestis,* 68 Ill. 594; 11 Am. & Eng. Ency. of Law, (2d ed.) p. 372, and cases there cited.

If the word "children" is to be considered a word of purchase, and not of limitation, in the granting clause or premises of this deed, then, manifestly, it must be construed the same way in the *habendum* clause. Should these words be taken in their ordinary sense, without reference to the

context of the deed, then clearly, if the *habendum* clause does not in any way limit or define the estate granted, under section 13 of our statute on conveyancing, Eliza J. Williams and Mary G. Williams would take an estate in fee in the property in question, because Mary G. Williams was the only child *in esse* at the time the deed was delivered, and a grantee must be in existence at the time the deed is executed in order that a present title in possession may pass. (*Miller* v. *McAlister,* 197 Ill. 72; *Morris* v. *Caudle,* 178 id. 9.) The son, John Williams, Jr., was not born until some time after this deed was executed. It may be said in passing, it appears from the record that his only heirs were his mother, Eliza J. Williams, and his sister, Mary G. Williams, hence the fee simple title would ultimately have all been in these two, even if he had been in existence at the time of the execution of the deed and had taken thereunder. Should the *habendum* clause be construed to limit or define the estate conveyed in the granting clause in accordance with the rule laid down in *Riggin* v. *Love,* 72 Ill. 553, *Welch* v. *Welch,* 183 id. 237, and *Sassenberg* v. *Huseman,* 182 id. 341, then, construing the word "children" not to mean "heirs," but in the ordinary sense, without any reference to the context, and considering both the granting and *habendum* clauses together, it would not create an estate tail, but Eliza J. Williams would have taken the property for and during her natural life and Mary G. Williams would have taken the remainder of the estate. (*Beacroft* v. *Strawn,* 67 Ill. 28.) So that whether the *habendum* clause be considered repugnant to the granting clause, and therefore rejected, or whether it be construed as limiting and defining the granting clause, if the word "children" be construed not to mean "heirs," and therefore not conveying an estate in tail, the ruling of the county court must be upheld.

The word "children," however, when the context requires it in order to carry out the intent of the testator or grantor, has been construed to mean "heirs." In *Sweet-*

*apple* v. *Bindon,* 2 Vern. 536, (quoted in 1 Preston on Estates, 409,) it was held that where there was a gift by will, to be laid out by the testatrix in lands and settled to the use of the daughter, Mary, and her *children,* and if she died without issue, then over, "the court must take the will as they found it; that Mary had an estate tail in the lands to be purchased." Lord Hardwick is quoted as having said in discussing this question in *Bagshaw* v. *Spencer,* 2 Atkyns, 577: "There can be no magic or particular force in certain words more than others; their operation must arise from the sense they carry." Justice Buller, in considering a similar question in *Hodgson* v. *Ambrose,* 1 Douglas, 336, said (p. 342): "It seems to me to be a false logic to put a different sense upon any words from what, in general, they import to bear, by mere inference from the words themselves, unexplained by any others; though if other words manifest the intent, I know of no law that says the intent shall not prevail." This court in *Strawbridge* v. *Strawbridge,* 220 Ill. 61, said (p. 63): "The term 'children' is primarily a word of purchase, and is not to be construed as equivalent to 'heirs' in the absence of other words or circumstances showing it to have been used in that sense; but where there are other words in the will showing that the word 'children' was used in the sense of 'heirs,' the word will be construed as a word of limitation equivalent to 'heirs.' " (See, also, 5 Am. & Eng. Ency. of Law,—2d ed.—1092, and cases there cited.) This court has held that the words "heirs," "issue" and "children" may be construed interchangeably when found necessary to effectuate the intention of the testator, and that the words "heirs" and "children" may be used synonymously in the same instrument. *Butler* v. *Huestis, supra; Leiter* v. *Sheppard,* 85 Ill. 242.

The grantor, Thomas Redmond, clearly intended to create an estate tail by this deed, therefore he must have used "children" in the sense of "heirs." It is admitted by all the briefs that if the *habendum* does not limit or define in some

222—27

way the estate conveyed by the granting clause, then the granting clause, under the common law, would create an estate tail general, which, under the sixth section of our statute relating to conveyances, would vest in Eliza J. Williams a life estate with the remainder in fee to Mary G. Williams.

But appellants contend that the *habendum* clause defines the estate conveyed and that Eliza J. Williams took simply an ordinary life estate, independently of the entailed estate, and that Mary G. Williams was the first tenant to hold by virtue of the fee tail estate. They state in their reply brief that they have not been able to find any case in which a deed with similar language has ever been construed before a court of last resort of any of the States. The question may never have been directly before any of the courts of this country, (although the case of *Ross* v. *Adams,* 28 N. J. L. 160, is very similar,) but some early English decisions on this question may be found construing words substantially the same as those in this deed, and it is evident that a careful consideration of the "old black-letter law" will furnish the true guide to the original nature and incidents of those estates which have been handed down from those times, and particularly of one like fee tail, which, having been practically abolished in our jurisprudence, is only to be found treated as a vital reality in the country and at the period in which it grew and flourished. Taking the construction of the *habendum* clause most favorable to appellants, then the rule in *Shelley's case* may be invoked, with the long line of decisions based thereon, in order to arrive at the proper construction to be given the words in the *habendum* clause. In *Perrin* v. Blake, 4 Burr. 2579, which is one of the first decisions giving prominence to the rule laid down in *Shelley's case,* a learned sergeant expressed the rule in *Shelley's case* to be: "In any instrument, if a freehold be limited to the ancestor for life and the inheritance to his heirs, either mediately or immediately, the first taker

takes the whole estate; if it be limited to the heirs of his body he takes a fee tail; if to his heirs, a fee simple." This statement of the rule is quoted with approval in Preston on Estates, (vol. 1, 265,) and has been frequently sanctioned by this court. (*Baker* v. *Scott,* 62 Ill. 86; *Butler* v. *Huestis, supra; Frazer* v. *Supervisors,* 74 Ill. 282.) In the report of *Perrin* v. *Blake, supra,* it is stated that in case of "a devise to A for life and afterwards to the heirs of his body, it was admitted on all hands that A took an estate tail." The same rule is laid down in *Hayes* v. *Foorde,* 2 Blackstone, 698; *Colson* v. *Colson,* 2 Atkyns, 246; *Bagshaw* v. *Spencer, supra; King* v. *Melling,* 2 Levinz, *58; *Richards* v. *Bergavenny,* 2 Vern. 324; *Elton* v. *Eason,* 19 Ves. 73. In these last two cases, Preston on Estates (vol. 1, 419,) states the findings of the courts in the following words: "A devise to A for life and the heirs of her body, if any, is an intail in A;" and, "Devise to A for life, and after her death to the heir male of her body living at her death, is an estate tail in A." These cases are decisive. If the *habendum* clause defines the estate granted, then Eliza J. Williams, except for our statute, would be held to be the first taker in a fee tail estate.

But appellants contend that the words in the deed, *"to the use* of the said Eliza J. Williams for and during the term of her natural life, and after her death *to the use* of the children of her body begotten, in fee tail forever," require a different construction than if the word "use" had not been inserted. Coke says: "If an estate be made, either before or since the statute of 27 Henry VIII, chap. 10, to a man and the heirs of his body, either to the use of another and his heirs or to the use of himself and his heirs, this limitation of use is utterly void." (1 Coke, Thomas' ed. 400.) This court has held that a trusteeship cannot be predicated of one who holds for life only and for his or her sole use and benefit. (*Schaefer* v. *Schaefer,* 141 Ill. 337; *Thompson* v. *Adams,* 205 id. 552.) The words "to the use of" are

of no effect, for the equitable estate is merged in the legal estate. The equitable estate and the legal estate are in the same person. 1 Perry on Trusts, sec. 13.

It has been held by this court that the rule in the *Shelley case* did not apply to an estate tail in this State for the reason that our statute had provided to the contrary. (*Butler v. Huestis, supra; Baker v. Scott, supra.*) Under section 6 of our act on conveyances, as construed by this court, Eliza J. Williams took under this deed an estate during her life, and her daughter, Mary G. Williams, took the remainder in fee simple. *Frazer v. Supervisors, supra; Lehndorf v. Cope,* 122 Ill. 317; *Kyner v. Boll,* 182 id. 171; *Atherton v. Roche,* 192 id. 252; *Peterson v. Jackson,* 196 id. 40; *Metzen v. Schopp,* 202 id. 275.

The construction contended for by appellants is absolutely inconsistent with the spirit and policy of all American law. It should not be admitted unless the language is so plain that no other construction is possible, and even then the courts should not lay down such a rule unless the great weight of authority absolutely requires it. As we have seen, even in times when the policy of the law was to entail property for generations and thus foster and sustain a privileged class, the contention of appellants would not have been upheld; much less should it in this day, when the courts have repeatedly held that estates must vest at the earliest period possible, and that public policy requires that the entailment of estates be considered absolutely inconsistent with the genius and teachings of the American people.

The conclusions we have reached on the points heretofore discussed render it unnecessary to consider other points argued in the brief.

We think the rulings of the county court were in accordance with the law. The decree of that court will accordingly be affirmed.                                        *Decree affirmed.*