JOHN F. CONNOR *et al.*

*v.*

JAMES GARDNER.

*Opinion filed October 23, 1907—Rehearing denied Dec. 6, 1907.*

1. WILLS—*courts endeavor, in construing wills, to prevent intestacy as to any part of estate.* In construing a will a construction should be adopted, if possible, which will prevent intestacy as to any portion of the estate, since it is presumed that the testator intended by his will to dispose of all his property.

2. SAME—*what strengthens the presumption against intestacy.* The facts that the testator states in the first clause of his will that he is desirous of making "a disposition of my estate," and that he makes provision for adding to a certain devise in case the farm which was the subject thereof was not an equal share of "all my estate," and makes provision for forfeiture of half of the portion of any heir in case such heir goes to law "respecting my estate or any part thereof," indicate that the testator intended to dispose of his entire estate and strengthen the presumption against intestacy.

3. SAME—*rule as to devises by implication.* A devise by implication cannot rest upon conjecture, but it is not required that the inference should be absolutely irresistible; and it is sufficient if the whole circumstances, taken together, afford such an inference as leaves no doubt in the mind of the court as to testator's intention.

4. SAME—*when devise by implication exists.* Where the only express devise of land comprises about one-fifth of the testator's estate, which is given in fee to a certain son, the remaining portion will be regarded as devised, by implication, to the remaining four children of the testator even though there is no express provision to that effect, where it appears from the various parts of the will that the testator intended to divide his property among his children in substantially equal portions.

5. Same—*general rule where devise is to a person and his children.* In general, a devise to a person and his children may mean any one of three dispositions: That the devisee named shall have the whole estate; that the devisee shall have a life estate with remainder in fee to his children; or that the devisee named, and his children, shall take jointly or as tenants in common.

6. Same—*word "children," in a will, does not ordinarily mean "heirs."* The word "children," in a will, does not ordinarily mean "heirs," so as to bring the devise under the operation of the rule in *Shelly's case,* unless the context of the will leaves no doubt of such intention.

7. Same—*words "child" and "children" have no fixed technical meaning.* The words "child" and "children" are not technical terms, to which a fixed and determined meaning must be given, regardless of the sense in which they were used, but are flexible and subject to construction, in order to give effect to testator's intention.

8. Same—*rule in Shelly's case does not apply where the words "child" and "children" are used.* Where the testator uses the words "child" and "children" the rule in *Shelly's case* has no application, and the court is left free to adopt such a construction as will carry out the intention of the testator, although such intention, when ascertained, may lead to the same result as would have been reached, under the rule in *Shelly's case,* had the term "heirs" been used.

9. Same—*when testator's children take a fee.* A provision of a will that "the shares or portions of my estate falling to my daughters, respectively, shall be theirs ,or their child or children's, exclusively," will be regarded as passing a fee to the daughters, where, from the only express devises in the will, it appears that the testator, by giving a life estate to his wife and a fee to his son, appreciated the difference between the two estates yet gave no express life estate to his daughters, and where the whole will manifests an intention to deal equitably with his children, to one of whom he had devised a fee.

10. Same—*words of inheritance not necessary to pass a fee in Illinois.* The rule in *Wilde's case,* 6 Coke, 17, does not control in Illinois, since, under our statute, words of inheritance are not necessary to pass a fee title in land.

11. Same—*what provision strengthens conclusion that testator intended to devise a fee.* A provision that if any of the testator's children shall die childless her or their shares shall revert to the other children, "except the law otherwise directs," strengthens the conclusion that the testator intended to vest a fee in such children, since otherwise, upon their death, there would be nothing upon which the clause, "except the law otherwise directs," could operate.

APPEAL from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

James Gardner, appellee herein, claiming to be the owner in fee and in possession of the east half of the north-east quarter of section 20, township 16, north, range 7, west, in Sangamon county, Illinois, filed a bill in chancery to remove as a cloud upon his title certain alleged claims of appellants based on the last will and testament of Joseph Berry, deceased. Appellants answered the bill, denied that the appellee was the owner in fee, and set up the claim that appellants were the owners in fee under the will of their grandfather, Joseph Berry. The answer set out the will *in hæc verba.* Appellee filed exceptions to the answer, and the circuit court held that under the will appellants had no interest in the premises, sustained the exceptions, and ordered all portions of the answer relating to said will, and the copy thereof, expunged from the answer. The cause was referred to the master, who took the evidence upon the allegations of the appellee's bill and recommended a decree in accordance with the prayer thereof. Accordingly the prayer of the bill was granted, and appellee was adjudged to be the owner in fee and that the appellants had no interest, right or title in said premises by virtue of the will set out in the answer. Appellants excepted and have appealed to this court, assigning as error the ruling of the court holding that appellants had no interest or title under the will and in expunging it from the answer and in decreeing the relief prayed for in the bill.

The will of Joseph Berry, under which appellants set up title, is as follows:

"Know all men whom it may concern, that I, Joseph Berry, of Bath county, State of Kentucky, being of sound and deposing mind and desiring to make a disposition of my estate at my leisure, do now make it as follows, viz.: I

will and direct that all my just debts be honestly paid, and if my personal property be not sufficient for that purpose, then such of my real estate as shall seem most advisable to my executors shall be sold for that purpose. I will and direct that my wife, Jane C. Berry, have one-third part of my estate during her life, as the law directs. I further will and direct that my son Joseph A. Berry after my death shall own and possess forever my farm I now live on, lying on Flat creek and containing about three hundred acres of land, be it more or less, (reserving my wife's right of dower to her if then living,) on condition that he lives with me during my life, supports myself and family and attends to my business and the cultivation of my farm, all the proceeds being mine except what we may agree on as his; and if the above named farm shall not be an equal share or portion of all my estate, including in the estimate the Paris and Bourbon property not disposed of which my wife inherited of her father, so as to make his share equal to the share of the rest of my children, viz., James J. Berry, Elizabeth, Mary Jane and Ann Amelia, respectively, or of such of them as shall then be living, or their child or children being their legal representatives, then said Joseph A. Berry shall receive of the rest of my estate, and of the landed property my wife inherited from her father, as together shall make his share equal to that of the rest of my children, respectively. But if the share of said Joseph A. Berry (I mean the farm,) should exceed the share of the residue of my children, respectively, there shall be no deduction made from said farm, but he shall own and possess all said farm as his share and in consideration of his expenses and trouble in attending to my business and supporting myself and family, and giving and returning to me a bond I formerly executed to him for two hundred and eighty-two and ten hundredths acres of land lying in Rush county and State of Indiana. I further will and direct the shares or portions of my estate falling to my daughters, respectively, shall

be theirs and their child's or children's exclusively, shall be under the control of my executors to rent, lease, sell and convey said property of said daughters, to give each, as their necessity may demand, a part of the money, vest part in bank stock or withdraw said stock when advisable, and may vest part of said money in other landed property for the sole benefit of said daughters and children, at the discretion of my executors, said daughters' share or portion to be free from the control, debts or liabilities of their husbands; and if any of my daughters or sons should die childless, then her or their share or shares shall, except as the law otherwise directs, revert to the residue of my children, equally. I further direct that the sum of $1500 be deducted from the share of my son James J. Berry on account of the expense of his education, and also the sum of $712 which I gave him after his education was completed, so that his share shall be less than that of the rest of my children, respectively, by those sums last named. And I further desire, empower and direct my executors to manage and use the share of my estate falling to my son James J. Berry, which will consist mostly of Illinois and Indiana land, for his sole benefit and his children, if any, to rent, lease, sell and convey part or all of said James J. Berry's share and dispose of and vest the proceeds as in their judgment may seem best for his benefit, or if and when the said executors shall judge it advisable, to convey his share, or part thereof, in my estate to himself, said James J. Berry, they shall so convey. And further I will and desire my son Joseph A. Berry, my brother, John Berry, and Thomas Gordon, Esq., be executors of this my last will and testament, with power to choose others in their stead, if necessary. I also direct that my two grown slaves, Tarlton and Phebe, be sold to reasonably good masters; and further, that my two female slaves Rachel and Ellen, when arrived at the age of twenty-one years, be free and sent to Liberia or colony in Africa as soon as the hire of each shall defray expenses of trans-

portation. And further, that my young slave Jemima, in consideration of her earlier development of mind and in view of the probable advanced stage of colonization by that period, and that she may accompany her sister, Ellen, be free when seventeen years of age, and also sent to colony in Africa as soon as her hire will suffice to defray the expenses of her transportation, and that my executors attend to the hiring and transportation of said slaves to an African colony. And further, I direct that if any heir or heirs of mine shall institute against or go to law with another heir or heirs of mine respecting my estate or part thereof, said heir or heirs thus going to law shall forfeit and lose one-half of my estate they were otherwise entitled to, to be divided among the other of my heirs, equally. This clause is not intended to prohibit the legalizing some necessary and formal proceedings nor to prevent any heir or heirs from defending their just rights by law, if invaded by another heir or heirs, but in case of any difficulty or dispute should arise among any heirs of mine about my estate, it is my wish and intention that arbitrators chosen by my executors shall settle and determine finally such difficulties. I further direct that my daughter Ann Amelia, besides her equal share in all my estate, have and own her riding horse and saddle, and a new ........ that is in my house. That all my other household and kitchen furniture and bedding shall belong to, as well as my dwelling house, to my wife during her lifetime, and said house be a home free of charge to my daughter Ann Amelia while she remains unmarried and at the death of my wife shall belong to my son Joseph A. Berry, and that all my books be equally divided among my children, giving only to my sons, not to my daughters, my books in dead languages, and to my son Joseph A. Berry my medical books.

"Witness my hand and seal which I have subscribed in the presence of the subscribing witnesses, who have subscribed their names in the presence of myself and of each

other, this seventh day of May, in the year of our Lord eighteen hundred and fifty.

                                        JOSEPH BERRY.    (L. S.)"

It is averred in the answer that appellants were the surviving children and heirs-at-law of Mary Jane Connor, who was the daughter of Joseph Berry and one of the devisees under his will. It is also averred that the mother of appellants, Mary Jane Connor, and her brothers and sisters, devisees under the will of Joseph Berry, after the death of Joseph Berry, and in the year 1852, entered into a partition agreement in writing, by which it was agreed that certain persons therein named should make a partition and division of the real estate in Sangamon county, Illinois, among the several devisees under Berry's will, and that the said agreement was duly recorded, and that the commissioners therein named proceeded to make a partition and division among the parties and that' the land in controversy was assigned and set off to Mary Jane Connor, with other lands, as her share under the will aforesaid, and it is averred in the answer that the partition among the devisees of Joseph Berry was approved by all of the parties to said agreement and acquiesced in by them and the report was duly recorded. The answer charges that appellee and his grantors had actual notice of the rights of the appellants before they acquired any title to said premises. Appellants' answer further avers that under the provisions of said will and by virtue of said partition their mother, Mary Jane Connor, only acquired a life estate in said premises, and that upon her death the same became the absolute property of appellants, who were her only children. It is averred that Mary Jane Connor died in May, 1905, intestate, leaving appellants as her only children surviving.

The evidence shows that the appellee derived title by warranty deed from David W. Clarke and wife, executed February 14, 1895, and that Clarke derived title by two deeds,—one executed by Joseph A. Berry and wife May 1,

1875, and another warranty deed from R. M. Connor and Mary Jane Connor, his wife, dated March 22, 1875. Joseph A. Berry was a son of the testator, Joseph Berry, and sole acting executor under his will. The evidence shows that Joseph A. Berry purchased the land in controversy at a master's sale, and that on November 21, 1872,.a master's deed issued to him for the land in controversy. The evidence further shows that Clarke went into the actual possession of the premises, claiming to be the owner, by virtue of the deeds from Mary J. Connor and husband and Joseph A. Berry and wife in 1875, and that he continued in the actual, exclusive possession of the premises claiming to be the owner, and that he paid all taxes and assessments on said lands as the same became due, until he sold and conveyed the lands to appellee, in 1895, and that appellee has continued such possession and payment of taxes under claim of ownership to the present time. There is a period of actual adverse possession under claim and color of title and payment of taxes for approximately thirty years.

ALBERT SALZENSTEIN, for appellants.

PATTON & PATTON, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

. The question over which the most serious contention exists is, what interest, if any, did Mary Jane Connor take under the will of Joseph Berry? The appellants insist that their mother took a life estate only, with remainder in fee to her children, and that by the partition and her subsequent conveyance to Clarke, and Clarke's conveyance to appellee, only a life estate was conveyed, and that appellee and his grantors, being the owners of the life estate, could acquire no rights, by possession and payment of taxes, against the remainder-men so long as the life estate existed; while, on the other hand, appellee contends, first,

that Mary Jane Connor took no interest whatever under her father's will, and that whatever interest she had in the premises she acquired by descent; second, that if any interest passed to Mary Jane Connor under the will it was an interest in fee, and not a mere life estate. It is therefore apparent that the determination of the rights of the parties to this controversy depends largely upon the construction to be given to the will of Joseph Berry.

The testator resided at the time the will was executed, in 1850, on a farm on Flat creek, Bath county, Kentucky. He had a wife, Jane C. Berry, and five children—two sons, Joseph A. and James J. Berry, and three daughters, Elizabeth, Mary Jane and Ann Amelia Berry. At the time of his death he owned the farm on which he resided on Flat creek, containing about three hundred acres of land, and other real estate and a large amount of personal property in Kentucky. He also owned about twenty-five hundred acres of land in Sangamon county, Illinois, and considerable real estate in the State of Indiana.

It will be seen by a careful reading of the will set out in the statement, that the fundamental difficulty arises out of the failure of the testator to make any direct or explicit disposition of four-fifths of his estate. It will be noted that after providing for the payment of his just debts and a one-third interest in his estate for his wife, the testator gives absolutely to his son Joseph A. Berry, in fee, the farm on which the testator then resided, lying on Flat creek, containing about three hundred acres, reserving the right of dower to his wife therein if she survived him. Nowhere in the will is there any other express, specific devise of any of the real estate, either in Indiana or Illinois. A careful reading of the will, however, will disclose that the testator intended that his son Joseph A. Berry should have the Flat creek farm, and in case that farm was not equal to the shares remaining to be divided among his other children, the other shares should contribute to bring the value

of Joseph A.'s share up to the value of the shares received by his other children; that if the Flat creek farm should exceed one-fifth in value it was not to be reduced; that from the share of James J. Berry $2212 was to be deducted on account of advancements made to him; that the shares of his three daughters were to be equal, and that such shares should be free from the control, debts or liabilities of their husbands, and that the executors of the will took a power in trust to control, rent, lease, sell and convey the property of said daughters.

In construing the will such a construction should be adopted, if possible, as to prevent intestacy as to any portion of the estate. It is always presumed that the testator did not intend to die intestate as to any part of his estate. (*King* v. *King,* 168 Ill. 273; *Minkler* v. *Simons,* 172 id. 323; *Craw* v. *Craw,* 210 id. 246; *Greenwood* v. *Greenwood,* 178 id. 387.) The legal presumption in this case is strengthened by the clear expression by the testator of his intention to dispose of his entire estate, found in the first sentence of the will, as follows: "Know all men whom it may concern, that I, Joseph Berry, of Bath county, State of Kentucky, being of sound and deposing mind and desiring to make *a disposition of my estate* at my leisure, do now make it as follows." The words "disposition of my estate" indicate a purpose to dispose of all his estate, and not a part of it. Again, referring to the Flat creek farm the testator says: "If the above named farm shall not be an equal share or portion of *all my estate,* including in the estimate the Paris and Bourbon property," etc., thus showing that the testator had in mind his entire estate and contemplated an equal division of it among his children by his will. The intention of the testator to make a full and complete disposition of his entire estate is further shown by the clause directing that "if any heir or heirs of mine shall institute against or go to law with another heir or heirs of mine respecting my estate or part thereof," such heir should

forfeit one-half of the estate that he would otherwise be entitled to; and also the provision that if "any difficulty or dispute should arise among any heirs of mine about my estate" the same should be determined by arbitrators chosen by the executors. If the testator failed to dispose of his entire estate by his will such failure is not due to any expressed intention to die intestate as to any part thereof.

Having determined what the intention of the testator was, the next matter requiring consideration is whether such intention is so expressed or implied in the words of the will as to carry into effect such intention consistently with the rules of law. As already pointed out, there is no direct or express devise of real estate to any of his children except Joseph A. Berry, but in our opinion the intention to devise the residue of his estate in equal parts to his four other children, less deductions from James' share, is so manifest from the general testamentary scheme as gathered from the words of the will, that a devise by implication must be held to have been made. A gift is made, without any express words of gift, if an intention to give clearly appears from the will as a whole. (Rood on Wills, sec. 495.) A devise by implication cannot rest upon conjecture, but it is not required that the inference should be absolutely irresistible. It is enough if the whole circumstances, taken together, afford such an inference as leaves no doubt in the mind of the judge who has to decide, as to the intention of the testator. (*Hartley* v. *Hurle,* 5 Ves. 546; *Bootle* v. *Blundell,* 19 id. 517.) To uphold a legacy by implication, the inference, from the will, of the testator's intention must be such as to leave no hesitation in the mind of the court and permit of no other reasonable inference. (*Bradhurst* v. *Field,* 135 N. Y. 564; 32 N. E. Rep. 115; *Brown* v. *Quintard,* 177 id. 75; 69 id. 225.) Referring to the shares of the daughters the will provides: "I further will and direct the shares or portions of my estate falling to my daughters, respectively, shall be theirs and their child's or children's exclu-

sively," etc. Again, referring to his daughter Ann Amelia, the testator uses this language: "I further direct that my daughter Ann Amelia, *besides her equal share in all my estate,* have and own her riding horse and saddle and a new ........ that is now in my house." Of the fifteen or more times where the testator uses the word "share" or "portion" the above is the only place where the share is qualified by the word "equal." In other parts of the will Ann Amelia's share or portion is referred to simply as "her share" or "her portion," but in the expression last above quoted the testator gives Ann Amelia her riding horse and saddle "besides her equal share in all my estate." Can there be any reasonable doubt that the testator intended that Joseph A. should have the Flat creek farm, and, if necessary, enough to make it equal to a one-fifth share of his entire estate, and that he intended that his son James J. should have one-fifth, less the advancements made to him, and that the three daughters should each have one-fifth, and that Ann Amelia should, in addition thereto, have her riding horse and saddle? It seems to us that the inference is so clear that the case is controlled by the rules relating to devises by implication.

Appellants insist that the daughters of the testator took merely a life estate with remainder in fee to their children. This contention is based on the clause of the will which directs that "the shares or portions of my estate falling to the daughters, respectively, shall be theirs or their child's or children's exclusively," the argument being that a devise to one and his "child" or "children" passes only a life estate to the first taker with remainder in fee to his children. Where a devise is made to a person and his children it may mean any one of three dispositions: (1) That the devisee named should have the whole estate; (2) that the devisee should have a life estate and a remainder in fee to his children; (3) that the devisee named, and his children, should take jointly or as tenants in common. (Rood on Wills,

sec. 552.) The word "children," in a will, does not ordinarily mean "heirs" or "heirs of his body," so as to bring the devise under the operation of the rule in *Shelly's case,* unless the context of the will leaves no doubt of such intention. The word "heirs" is a word of limitation and not of purchase, and when used in a will its legal intendment is to designate a class of persons who are to take in succession, from generation to generation, and the law effectuates this purpose by declaring a fee to pass to the first taker, or, as it is sometimes expressed, by giving a life estate to the first taker and a limitation in fee to himself. (Kales on Future Interests, sec. 129; *Schaefer* v. *Schaefer,* 141 Ill. 337; *Strawbridge* v. *Strawbridge,* 220 id. 61.) The words "sons," "daughters," "child" and "children" are not technical, legal terms, to which a fixed and determined meaning must be given regardless of the sense in which they are employed, but they are flexible and subject to construction, to give effect to the intention of the testator. In *Schaefer* v. *Schaefer, supra,* this court gave the word "children," where the same occurred twice in the same clause, directly opposite meanings, holding that in one case it meant heirs and was a word of limitation, and in the other that it was a word of purchase. The rule in *Shelly's case* often defeats the clearly expressed intention of the testator. In a devise to one for and during his natural life with remainder to his heirs in fee, the inexorable rule of the common law, from which courts cannot escape without legislative aid, requires them to set at naught the clearly expressed intention and decide that the testator gave a fee simple title to the first taker, although he expressly limited it to a life estate by apt words. When, however, the testator has used other words, such as "child" or "children," the rule in *Shelly's case* has no application, and the court is left free to adopt a construction which will carry into effect the intention of the testator. It is true, the intention, when discovered, may lead to the same result as is reached under

the rule in *Shelly's case* where the word "heirs" is used, but if this be so, it is because the intention is carried out by adopting such construction. It will never be so construed to defeat the intention, as may follow from the rigor of the rule in *Shelly's case.*

When the will in hand is considered in all its parts and each part compared with the other, we cannot escape the conclusion that the intention of the testator was to devise a fee simple title to each of his children. We reach this conclusion by considering that the testator gave a life estate expressly to his wife. This shows he appreciated the difference between a fee simple title and a life estate and was apprised of the proper method of creating the latter. He did not, by express words, create a life estate for his daughters as he did for his wife, from which an inference, of more or less strength, may be deduced that he intended something different for the daughters. Again, we find running through the whole will unmistakable evidence that the testator desired to deal equitably with his children. There can be no doubt that the devise to Joseph A. was a fee in the Flat creek farm. The other "shares" or "portions" were to be equal shares in his estate. The equality contemplated was not merely equality of quantity, but equality in value and character of the estate devised. It cannot be supposed that the testator intended to give Joseph A. a fee in the Flat creek farm, which was, it is fair to assume, improved and productive, and give his daughters only a life estate in a lot of cheap, non-productive prairie lands, such as much of Sangamon county was in 1850. These lands were only appraised at from $6 to $12 per acre in 1852. In fact, we do not see how it would be possible to procure the equality which was, as we conceive, the chief concern of the testator, unless we assume that it was the intention to pass the same quality of title to the daughters that was given to Joseph A. There is here clear manifestation of an intention to give an estate in fee. The rule adopted in *Wilde's*

*case,* 6 Coke, 17, would, if followed, probably lead to a different result; but that rule does not control in this State, since under our statute words of inheritance are not necessary to pass a fee. *Davis* v. *Ripley,* 194 Ill. 399; *Strawbridge* v. *Strawbridge, supra; Boehm* v. *Baldwin,* 221 id. 59.

It is suggested that the provision that if any of his children should die childless her share or their shares should revert to the other children equally, distinguishes this case from *Davis* v. *Ripley, supra, Strawbridge* v. *Strawbridge, supra,* and *Boehm* v. *Baldwin, supra.* We do not see how this clause can have any effect, since the shares only revert in case the law does not otherwise dispose of the estate. The clause is modified by "except the law otherwise directs." Of course, if the devisee should die childless and the law did not provide any other person to take the estate it would pass by descent to the surviving brothers and sisters, but if they should leave a surviving husband or parent the law of descent would direct otherwise, and the estate would not be distributed among the brothers and sisters equally. This clause tends to strengthen, rather than weaken, our conclusion that the testator intended to vest an estate of inheritance, for otherwise there would be nothing upon which the clause "except the law otherwise directs" could operate.

Our conclusion is that the testator devised an equal portion of his real estate to each of his children in fee, and that Mary J. Connor, the mother of appellants, obtained a title in fee by the partition made among the children of Joseph Berry to the land in controversy, and when she conveyed the premises, in 1875, by general warranty deed, the title passed to her grantee. Appellants therefore have no interest in these premises, and the court properly decreed that their alleged claim was a cloud upon appellee's title.

The decree of the circuit court is affirmed.

*Decree affirmed.*