(No. 12626.—Decree affirmed.)
IRA D. WILSON, Appellee, *vs.* WILLIAM HARROLD *et al.* Appellants.

*Opinion filed June 18, 1919.*

1. TRUSTS—*trust will fail where equitable and legal estates are in same person.* A trust will fail where the equitable and legal estates are in the same person, as a person cannot be both a trustee and a beneficiary, and a trusteeship cannot be predicated of one who holds for life, only, or for his or her sole use and benefit. (*Hagan* v. *Varney*, 147 Ill. 281, distinguished.)

2. SAME—*rule in Shelley's case applies to trust estates.* Where a limitation in a deed is subject to the rule in *Shelley's case* the rule will be applied whether the limitation is of an equitable or legal estate.

3. DEEDS—*the rule in Shelley's case must control although contrary to grantor's intention.* Where the rule in *Shelley's case* is applicable to a limitation in a deed the rule must control and vest a fee simple, even though the intention of the grantor is shown clearly by the instrument to have been otherwise.

4. SAME—*the rule in Shelley's case applies to grant to "lawful heirs."* The qualifying adjective "lawful" before the word "heirs" in a deed does not in any way change the meaning of the word "heirs" to one of purchase rather than of limitation and does not prevent the application of the rule in *Shelley's case.*

5. SAME—*in construing deed, written part controls printed matter.* If there is a conflict in a deed between the printed part and the part written in, the writing will control in construing the deed.

6. SAME—*when words in a deed may be considered as surplusage.* Where the grantor in a deed has intermingled unnecessary and meaningless words with words of conveyance, or added other language after the words of conveyance which only serve to confuse, cut down or to destroy the known legal estates conveyed by proper words used, such superfluous matter may be disregarded.

7. SAME—*what description of heirs may be disregarded in applying the rule in Shelley's case.* The printed words "of DeWitt county and State of Illinois," following the word "heirs" in a deed, do not sufficiently describe the heirs so as to prevent the application of the rule in *Shelley's case,* where it is clear those words refer merely to the place of residence of the grantee.

APPEAL from the Circuit Court of DeWitt county; the Hon. GEORGE A. SENTEL, Judge, presiding.

GEORGE J. SMITH, for appellants.

HERRICK & HERRICK, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill filed by appellee in the circuit court of DeWitt county to quiet the title to twenty acres of land and for the construction of a certain deed. After the pleadings were settled the cause was referred to a master, who found that Charley Harrold took a fee simple title to said premises through a deed from Presley Williams and wife; that the trust estate created by said deed failed and that therefore the rule in *Shelley's case* applied in the construction of the deed, and that appellants here had no right, title or interest in and to said land. A decree was entered overruling the exceptions to the master's report and a finding was entered in accordance with said report. From that decree this appeal has been perfected.

Presley Williams was the owner of said twenty acres and on January 7, 1895, executed, with his wife, the deed in question. After the usual opening, naming the grantors and their residence, the deed continues: "For and in consideration of love and affection and five ($5) dollars in

hand paid, convey and warrant to Charley Harrold in trust during his natural life and at his death to his lawful heirs, it being expressly understood that but a life estate is hereby deeded to said Charley Harrold, and that he cannot make a good title by deed or other conveyance but is to have the use of the land to be conveyed, only, and is to hold it absolutely in trust for his lawful heirs of DeWitt county and State of Illinois, the following described real estate, to-wit: [describing it.]   Hereby reserving the control of said land and the right to collect, have, hold and use the rents and profits of said land to said Presley Williams for and during his natural life; and it is hereby agreed and expressly understood by and between all the parties to this instrument that the title to and in the above described land does not pass from said grantors, Presley Williams and Jemimah Williams, to the said Charley Harrold in trust as above until the death of the said Presley Williams, but at his death the title in said lands in trust is to pass to the said Charley Harrold, but only in trust; it being the intention of the said grantor to reserve and hold a life estate in the above described land to and for the said Presley Williams."

The record shows that Presley Williams departed this life testate August 13, 1898, and his estate was duly probated; that Charley Harrold had born to him in lawful marriage three children, who are the appellants herein; that on May 4, 1912, Harrold and his wife conveyed and warranted to Ira D. Wilson, appellee herein, for a consideration of $1500, the fee simple title in said twenty acres of land by deed, which was duly filed for record.

Counsel for the appellants argues that Charley Harrold took a life estate, only, in the deed from Mr. and Mrs. Williams and that his three children took the fee under the designation of "his lawful heirs," contained in said deed; that whether this is true or not, the deed should be so construed as to exclude the rule in *Shelley's case* from apply-

ing thereto; that it was plainly the intention of the grantors that Harrold should only take a life estate. Counsel for appellee argue that Charley Harrold took a fee simple title under said deed; that as there was no legal separation of the legal and equitable estates in the conveyance to Harrold, there was a merger of the estates in him as sole trustee and beneficiary of the life estate, and therefore the rule in *Shelley's case* applies to the remainder conveyed to the "lawful heirs" and Harrold took title to the entire fee.

The first question to be considered is whether the attempt of Presley Williams and wife to create by their deed a trust in Charley Harrold failed. It has frequently been stated by the authorities that a person cannot both be a trustee and a beneficiary; that "this doctrine results from that of merger of estates rather than from any incompatibility of interest between the trustee and *cestui que trust.* It is undoubtedly true that the same person cannot be at the same time sole trustee and sole beneficiary of the same identical interest; but a *cestui que trust* is not absolutely prohibited from occupying the relation of trustee for his own benefit, and especially is this so when he is but one of several trustees, or where he is a trustee for himself and others." (39 Cyc. 248, and authorities there cited; see, also, 28 Am. & Eng. Ency. of Law,—2d ed.—955; 1 Perry on Trusts,— 6th ed.—sec. 347, note (*a*), in which are cited, among other authorities, the decisions of this court in *Burbach* v. *Burbach,* 217 Ill. 547, and *Spengler* v. *Kuhn,* 212 id. 186.) In Perry on Trusts (vol. 1, 3d ed. sec. 13,) that author states: "No person can be both trustee and *cestui que trust* at the same time, for no person can sue a subpœna against himself. Therefore, if an equitable estate and a legal estate meet in the same person the trust or confidence is extinguished, for the equitable estate merges in the legal estate." This court has held that the trusteeship cannot be predicated of one who holds for life, only, and for his or her sole use and benefit. (*Dick* v. *Ricker,* 222 Ill. 413.) In

*Thompson* v. *Adams,* 205 Ill. 552, this court in construing a will said (p. 556): "No trust is created by this will. The widow is to have the sole use and benefit of the real and personal property so long as she lives and remains unmarried, and upon her death or re-marriage possession and the title in fee simple will unite at once in the same persons. The provision of the will creating her a trustee is therefore inoperative. 'A trusteeship cannot be predicated of one who holds for life, only, and for his or her own sole use and benefit, and the instrument which gives the life estate also gives the remainder to others in their own right, and no duty other than those that grow out of their legal relation is imposed upon the life tenant.' (*Schaefer* v. *Schaefer,* 141 Ill. 337.) The rights, duties and obligations of the widow under this will, so long as she remains unmarried, are those of a life tenant, only. The words used for the purpose of creating a trust may be rejected as surplusage."

These three decisions by this court can in no way be distinguished, on the facts or the law, from the case before us, and therefore the rule laid down in those cases must control here. It may be true that recent authorities are holding more liberally, and the courts are becoming more and more inclined towards carrying out the intention of the grantor or testator in regard to trusts, rather than attempting to defeat the intention by the application of strict rules as to merger or otherwise, as was said in *Irving* v. *Irving,* 47 N. Y. Supp. 1052, in accordance with the reasoning in Lewin on Trusts, (11th ed. 914,) but the rules laid down by this court must govern in matters of this kind rather than the reasoning in other jurisdictions.

Counsel for appellants relies on the reasoning of this court in *Hagan* v. *Varney,* 147 Ill. 281, as tending to uphold his argument that a trust was here created. The wording of the instrument there construed is entirely different from that in this case, and is different from the

wording of the instruments construed in the three cases
in this court heretofore cited. If there is anything in that
decision contrary to the conclusion here reached that no
trust was created, it must be held that such reasoning was
overruled, in effect, by the opinions of this court in *Schae-
fer* v. *Schaefer, supra, Thompson* v. *Adams, supra,* and
*Dick* v. *Ricker, supra.* The case of *Fowler* v. *Black,* 136
Ill. 363, tends also to support the same conclusion.

Counsel for appellants further argues that even though
the trust has failed the rule in *Shelley's case* will not apply
and merge the fee in Harrold, for the reason, as we under-
stand the argument, that this rule does not apply to trust
estates. We find no authorities supporting this argument.
In Perry on Trusts (vol. 1, 6th ed. sec. 358,) this question
is discussed, and the author says, among other things: "As
trusts are wholly independent of tenure they ought not to
be affected by the rule, and a few cases have seemed to in-
dicate that they were withdrawn from the operation of it;
but it is now established that the same rule shall apply
to the same limitation, whether it is of an equitable or a
legal estate,"—citing numerous authorities, all apparently
upholding the doctrine of the text, and this seems to be the
general conclusion reached by the authorities. It is, how-
ever, stated by some writers that the rule does not apply
to executory trusts, using the word "executory" in a lim-
ited sense; that all trusts which are not dry or passive are
executory in some sense, but that a trust, to be subject to
the rule, must be such a one that its limitations are left to
the court to frame, the writing only giving general direc-
tions to guide the court in finding what estate is created.
For a full discussion of this doctrine see Lewin on Trusts,
(11th ed.) pp. 120-130, incl.; 1 Perry on Trusts, (6th ed.)
sec. 359; Tiedeman on Real Property, (3d ed.) sec. 322,
note 16. So far as we are advised, this court has always
assumed that the rule in *Shelley's case* applied to trust es-
tates. See *Bennett* v. *Bennett,* 217 Ill. 434; *Lord* v. *Com-*

*stock,* 240 id. 492; *McFall* v. *Kirkpatrick,* 236 id. 281; *Harvey* v. *Ballard,* 252 id. 57; *Carpenter* v. *Hubbard,* 263 id. 571; *Nowlan* v. *Nowlan,* 272 id. 526.

There being no trust estate created, the instrument granted a legal life estate to Charley Harrold with remainder to his heirs. "If an estate for life is granted by any instrument and the remainder is limited by the same instrument, either mediately or immediately, to the heirs of the life tenant, the life tenant takes the remainder as well as the life estate." (*Bails* v. *Davis,* 241 Ill. 536.) This instrument, therefore, in granting the legal life estate to Harrold and the remainder to his heirs, brings the wording squarely within the rule in *Shelley's case,* and therefore a fee simple was vested in Harrold. *Winter* v. *Dibble,* 251 Ill. 200, *Deemer* v. *Kessinger,* 206 id. 57, *Ætna Life Ins. Co.* v. *Hoppin,* 249 id. 406, and *Fowler* v. *Black, supra,* all tend to support this conclusion. This rule must control even though the intention of the grantor is shown clearly by the instrument to have been otherwise.

Counsel for appellants argues that the above rule should not apply because the instrument, instead of leaving the remainder simply to the heirs of Harrold, left it to his "lawful heirs." The qualifying adjective "lawful" before the word "heirs" does not in any way change the meaning of the word "heirs" to one of purchase rather than a word of limitation. *Deemer* v. *Kessinger, supra; Webbe* v. *Webbe,* 234 Ill. 442; *Stisser* v. *Stisser,* 235 id. 207; see, also, *Pease* v. *Davis,* 225 id. 408.

It is further argued by counsel for appellants that the rule should not apply because the instrument not only provides that the land shall go to the lawful heirs of Harrold, but still further particularizes by saying that it should go to "his lawful heirs of DeWitt county and State of Illinois," and that these words as used can still be said to make a particular description of the heirs the same as if the instrument had used the word "children;" that if the word "heirs" is

used as meaning "issue" or "children," then the rule in *Shelley's case* would not apply. (*Butler* v. *Huestis,* 68 Ill. 594; *Dick* v. *Ricker, supra; Stisser* v. *Stisser, supra.*) Apparently the original deed from Presley Williams and wife to Charley Harrold was drawn upon a printed form, and the proper erasures were not made in preparing the deed so as to erase the words "DeWitt county and State of Illinois," and these words referred to the place of the residence of the grantee and have no relation to the word "heirs." They form no part of the words of the conveyance and are really surplusage. Counsel for appellants does not deny that these words were a part of the printed form and that this explanation might be a reasonable one as to how they came to be in this instrument. Counsel for appellee argue that no sane man would limit an estate to his heirs of DeWitt county, only; that in the course of nature, affection and love for his donees he would follow rules of consanguinity and not geographical maps or municipal boundaries. If there is any conflict in a deed between a printed part and the part written in, the written part will control in construing it. (*Miller* v. *Mowers,* 227 Ill. 392, and cases there cited.) When the grantor in the instrument has intermingled unnecessary and meaningless words with words of conveyance and adds other language after the words of conveyance which only serve to confuse, cut down or destroy the known legal estates conveyed by proper words used, then all superfluous and surplusage matter may be cut out and disregarded. (13 Cyc. 619; 8 R. C. L. 1038, 1044.) The words "of DeWitt county and State of Illinois" are no part of the grantor's description of the estate granted. This being so the rule in *Shelley's case* applies, and the decree rightly held that the fee simple title was conveyed by this deed and vested in Charley Harrold.

The decree of the circuit court will therefore be affirmed.

*Decree affirmed.*